Roger F. BREDE, Petitioner,

v.

Colonel Arthur ALLEN, and Stanley
R. Resor, Secretary of Army,
Respondents.

No. C 69–864.

United States District Court,
N. D. Ohio, E. D.

Dec. 10, 1969.

Ralph Rudd, Rudd, Miller, Sheerer & Lybarger, Cleveland, Ohio, for plaintiff.

Timothy J. Potts, Asst. U. S. Atty., Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

LAMBROS, District Judge.

The present case involves the legality of the petitioner's induction into the Armed Forces. The petitioner, Roger F. Brede, submitted to induction on October 28, 1969. On the same day, the petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 *et seq.* In turn, this Court issued an order to show cause to the respondents. A hearing upon said petition was held on November 4, 1969 wherein the petitioner's selective service file was admitted into evidence. After reviewing the petitioner's selective service file, this Court makes the following findings of fact and conclusions of law:

The petitioner first registered with his Local Board No. 230 (hereinafter "Board" or "Local Board") shortly after his eighteenth birthday in February, 1961. While the petitioner attended college, he annually received a II–S or student deferment until January 8, 1968 when he was classified I–A. On February 21, 1968, the petitioner was ordered to report for induction on March 5, 1968. The petitioner's order was cancelled later inasmuch as he was a full-time student at Kent State University.

He was classified I–S(c) pending his graduation from college.

On November 27, 1968, the petitioner was classified I–A. The petitioner did not request a personal appearance nor appeal said classification. Later, on January 21, 1969, nine days before his twenty-sixth birthday, the petitioner was ordered to report for induction on February 4, 1969. On that date, the petitioner reported but due to a temporary illness of influenza, the petitioner was not accepted for military service. On the report of the medical examination of the petitioner, it was noted that the petitioner had active flu and should be reexamined in one month. The petitioner was informed that he was found not acceptable but would be given another physical examination. Said physical examination was given on April 8, 1969. At that time, the petitioner was found acceptable for military service.

On April 9, 1969, the petitioner for the first time informed the Board of his mother's mental condition. The petitioner's mother was hospitalized for a "schizophrenic reaction, paranoid type." at the Charlotte Medical Center Hospital, Punta Gorda, Florida in December, 1968. After the release of petitioner's mother on December 21, 1968, his mother's condition did not improve. The petitioner in his letter of April 9, 1969 requested that the Board delay his induction until his mother's condition improved or until such time as his family and he could arrange hospitalization for her. The petitioner enclosed a letter and an accompanying discharge summary from his mother's doctor, Dr. von Ruckteschell.

There was a relapse in the condition of the petitioner's mother and she was again hospitalized at the Charlotte Medical Center, Punta Gorda, Florida from April 8 through April 14, 1969 for schizophrenia. The petitioner's father died later on June 25, 1969.

Thereafter, on July 7, 1969, the petitioner requested that the Board grant him a dependency or hardship defer-

ment[1] not on the ground of financial hardship but of "moral dependency". He claimed that his mother, who was presently living with him, needed his support and care. He enclosed a letter of Dr. von Ruckteschell to this effect. The petitioner also returned a dependency questionnaire unanswered inasmuch as he claimed that he was not seeking a deferment on financial grounds for which the questionnaire was directed.

The Board reviewed his file and advised him on July 24, 1969 that the information contained in his file did not warrant the reopening of his classification. A day later the petitioner was ordered to report for induction on August 6, 1969 pursuant to his outstanding order to report for induction of January 21, 1969. This order of July 25, 1969 was not on the SSS Form 252 which is normally used to notify a registrant to report for induction. Instead, the order was contained in a letter. The Court shall refer to this form of notifying a registrant to report for induction as a "letter order."

The petitioner, on July 28, 1969, requested a postponement of his induction in order to take care of personal matters with respect to selling his mother's home in Florida and transporting her belongings to Cleveland. His August 6 induction was postponed until the September call pursuant to 32 C.F.R. § 1632.2(a). The petitioner was so advised by his Local Board.

On August 14, 1969, the petitioner requested the Ohio State Headquarters of the Selective Service System to consider his case alleging a financial dependency deferment. On the same date, the petitioner also requested his Board to consider him for a financial hardship deferment. He enclosed statements and a dependency questionnaire supporting his financial dependency deferment. The Board, on August 28, 1969, advised the petitioner that it had reviewed his file and a further delay in his induction was unwarranted.

On September 15, 1969, the petitioner requested the Presidential Appeal Board and the President of the United States to review his file. His requests were turned over to National Headquarters of the Selective Service System. In turn, the National Headquarters forwarded the petitioner's request to the Ohio State Headquarters. He was so advised. The Ohio State Headquarters, thereafter, advised the petitioner on October 2, 1969 that it agreed with the actions of his Board. He was expected to report as ordered.

In the meantime, the Board in letter orders of September 18, 1969 and September 23, 1969 again ordered the petitioner for induction first on October 1, 1969 and then on October 28, 1969.

On October 24, 1969, the petitioner requested the Board to reopen his classification and consider it anew. He claimed that his mother was dependent upon him emotionally. He enclosed a letter of one, Dr. Demmy of Cleveland, Ohio, to this effect. He also made reference to a letter by Dr. von Ruckteschell which also noted the mother's dependency upon the petitioner.

The Board did not take any action upon the petitioner's request apparently because it had reviewed his file twice before. Since the petitioner did not hear from the Local Board with respect to his request to reopen his classification, the petitioner, as noted previously, submitted to induction on October 28, 1969.

Upon the above facts, the petitioner alleges violations of his constitutional rights in two respects. These contentions will be discussed separately below.

### FIRST CAUSE OF ACTION

The petitioner contends that he was illegally inducted into the Armed Forces in that the Board failed to reopen his

---

1. Hereinafter, the words, "dependency deferment" and "hardship deferment", shall be used interchangeably to refer to the deferment given under 32 C.F.R. § 1622.-30(b). The text of this regulation appears in the text on page 603 *infra*.

classification under the provisions of 32 C.F.R. §§ 1625.2, .4.[2] In particular, the petitioner alleges that he presented a prima facie case that he was entitled to a III–A or hardship deferment and that there was a change of circumstances over which he had no control—*i. e.* the death of his father and his mother's two mental breakdowns. Since the Board did not reopen his classification upon the facts presented, he claims that he was denied due process of law in that the failure to reopen denied him the rights of a personal appearance and of an appeal. See United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y. 1966). Before considering the merits of this contention, a review of the law in this area is in order.

 In a selective service case wherein the classification of the registrant by the local board is the subject of the action, the court's scope of review is whether the board had a basis in fact for the classification. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). This basis in fact test is also used in a case where the board's action in failing to reopen a classification under 32 C.F.R. §§ 1625.2, .4 is the subject of the action. United States v. Jackson, 408 F.2d 1000 (6th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969). However, in determining whether there is a basis in fact in a case involving a reopening of a classification, the court reviews the selective service file to determine whether the registrant presented facts that were not considered at the time of his classification and which supported a prima facie case for the requested deferment. Petrie v. United States, *supra*, at 274–275; United States v. Mohammed, 288 F.2d 236 (7th Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26 (1961); United States v. Burlich, *supra*, 257 F.Supp. at 910–911. If the registrant sought reopening after an induction order has been mailed, as in the case at bar, the court must further determine whether the registrant also presented a prima facie case that the change in his status entitling him to a reclassification was due to circumstances beyond his control. Shook v. Allen, 307 F.Supp. 357 (N.D.Ohio 1969); Lane v. Allen, 307 F.Supp. 881 (N.D.Ohio 1969); Paszel v. Laird, 308 F.Supp. 741 (E.D. N.Y.1969). Furthermore, there is a denial of due process of law if the board refuses to reopen a classification even though the registrant has satisfied his burden of proof. See United States v. Freeman, *supra;* United States v. Burlich, *supra.* Thus,

"[w]hen the newly presented facts upon which a registrant seeks a change of classification are not frivolous and

2. The pertinent portions of the regulations read as follows:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

"When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required." 32 C.F.R. § 1625.4.

present a prima facie case for a requested deferment, a refusal by the Board to reopen his case so as to consider the merits of his claim constitutes a denial of procedural due process, since at once it denies the registrant the opportunity of personal appearance before the Board with the right to make a statement, to point out in what respect he believes they erred and what they overlooked, and to present any additional information to assist the Board in determining his proper classification, and at the same time effectively forecloses an appeal from its determination. United States v. Burlich, *supra*, at 911.

In applying the above principles of law to the present case, the Court has several determinations to make. One, under the provisions of 32 C.F.R. § 1622.30, the dependency deferment regulation, can a registrant claim a hardship deferment upon a ground other than a financial one? Or, in the terms of the present case, can he claim an "emotional hardship" deferment? Two, if a registrant can obtain an emotional dependency deferment, did the petitioner present a prima facie case to his Board that would have entitled him to said deferment? Three, since the petitioner sought a reopening of his classification after an induction order was mailed, did the petitioner present a prima facie case that the change in his status was a result of circumstances beyond his control?[3] The Court now turns to a discussion of the first question.

■ The pertinent portion of the hardship deferment regulation reads as follows:

"In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship to his wife, divorced wife, child, parent, grandparent, brother, or sister who is dependent upon him for support * * *." 32 C.F.R. § 1622.-30(b).

In order to receive a III–A or hardship deferment, it would appear that the registrant must demonstrate two things: one, a relative must depend upon the registrant for "support" and two, if such "support" was removed, the dependent would suffer extreme hardship. The cases, which have interpreted or applied this regulation, generally have involved a dependency deferment upon the ground of financial hardship. See *e. g.,* Petrie v. United States, *supra;* Howze v. United States, 409 F.2d 27 (9th Cir. 1969); United States v. Burlich, *supra.* There are cases which have dealt with financial considerations interrelated with the poor health of the dependent. See, *e. g.,* Lewis v. Secretary, Department of Army, 402 F.2d 813 (9th Cir. 1968); Hamilton v. Commanding Officer, Armed Forces Examining and Induction Station, 328 F.2d 799 (9th Cir. 1964) (registrant claimed deferment upon ground he wanted to be conservator of his mother's estate, since his mother was suffering from Parkinson's disease). There are also cases in which the registrant claimed the hardship deferment upon the ground that the dependent was in ill health. See, *e. g.,* United States v. Ronne, 414 F.2d 1340 (9th Cir. 1969) (Ditmars appeal); Reap v. Shambora, 241 F.2d 803, 807 (5th Cir. 1957). However, the Court has been unable to find a case which directly deals with whether a dependency deferment can be predicated upon emotional hardship in that the dependent is emotionally attached to the registrant. One case had a fact pattern in which the board considered an emotional dependency deferment but the court never decided this point. See United States v. Ruppell, 278 F.Supp. 287, 289 (E.D.N.Y.1968). Therefore, this Court must construe the regulation in order to determine whether such a deferment—*i. e.* an emotional dependency one—can be granted to a registrant. The Court finds that an emotional hardship deferment predicated upon the fact that a mother, who is men-

---

3. The Court makes a finding with respect to this question in footnote 5, *infra.*

tally ill, is emotionally dependent upon the registrant, can be granted.

The regulation itself does not preclude such a result. The language of the regulation is in the terms of "support." The first thing to come to mind, of course, is financial support. However, the regulation also contains the following provision which suggests that support has a broader meaning:

> "In the consideration of a dependency claim, any payments of allowances which are payable by the United States to the dependents of persons serving in the Armed Forces of the United States shall be taken into consideration, but the fact that such payments of allowances are payable shall not be deemed conclusively to remove the grounds for deferment when the dependency is based upon financial considerations and shall not be deemed to remove the grounds for deferment when the dependency is *based upon other than financial considerations* and cannot be eliminated by financial assistance to the dependents." 32 C.F.R. § 1632.30(d). (Emphasis added.) See also 50 U.S.C. App. § 456 (h) (2) which basically reads the same as the above regulation.

Thus, by referring to a dependency deferment "based upon other than financial considerations," the Congress and the President seem to imply that a dependency deferment can be predicated not only on financial grounds but also on other ones.[4]

Moreover, it does not seem to be unreasonable to permit hardship deferments on grounds other than financial ones. There may be cases of extreme hardship wherein financial support have little relevance. It would seem unreasonable and arbitrary to allow a deferment upon financial grounds but disallow one on other grounds if the latter one has merit. The Court will not attribute such a result to Congress nor to the President.

■ Inasmuch as the Court feels that a registrant can receive a deferment upon the ground of emotional dependency, the Court turns next to the question of whether the petitioner presented a prima facie case with respect to this deferment. "A prima facie case is made out if a registrant has presented facts which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant granting his requested classification." United States v. Burlich, *supra*, 257 F.Supp. at 911. The Court, in determining whether the petitioner did present a prima facie case to his Board, emphasizes that the regulation reads in terms of *extreme* hardship. See 32 C.F.R. § 1622.30(b). After reviewing the petitioner's selective service file, the Court finds that the petitioner did not present a prima facie case to his Board that his induction into the Armed Forces would cause extreme hardship to his mother.

The essence of the petitioner's claim for an emotional hardship deferment appears in a letter dated October 24, 1969. The pertinent portion of this letter reads as follows:

> "If I am inducted into the armed forces my mother will suffer extreme

---

4. In this regard, it is relevant to note that hardship deferments were given during World War II on grounds other than financial. According to a publication of the Selective Service System, which reviews the dependency deferments granted during World War II, a

> "Class III–D was created so as to have some category in which to place men whose dependents created problems which would not be solved by the allowances and allotments provided for in

the Servicemen's Dependents Allowance Act of 1942, or *who were needed more as a spiritual factor* in a bona fide family relationship within the home." Selective Service System, Dependency Deferment, Special Monograph No. 8, at 51 (1947). (Emphasis added.) See also page 60 of the above publication. Thus if a dependency deferment could be given upon "spiritual" grounds, assuredly one could be granted upon grounds of emotional dependency as in the case at bar.

hardship, perhaps not financially but emotionally, psychiatrically. Since my induction notice of January 21, 1969, my father has died, on June 25, 1969, and my mother has become very dependent upon me emotionally. She has already been hospitalized twice for mental illness. On the second occasion the crisis that required her hospitalization immediately followed and seemed to have been caused at least partly by my departure from home for induction, which was then scheduled for February 4, 1969. She is not living in my home and while I am there able to help reassure her and give her emotional support she is able to maintain sufficient stability and composure so that she does not need to be hospitalized, although she is far from well, having lost all interest in her former busy civic activities and even in her former friends.

But if I were to leave it seems very likely that she would suffer a serious relapse and have to be confined again in a mental hospital and perhaps again undergo electro-shock therapy. I see no way by which it could be reasonably denied that this would constitute an extreme hardship for her, if it happened."

Thus, the substance of the petitioner's request for reclassification is that his mother would suffer a relapse if he was inducted into the Armed Forces. The letters sent by the psychiatrists to the Board explain the reason for the possibility of such a relapse. The apparent reason seems to be that the mother requires emotional support since she cannot handle her own affairs and emotional needs. Thus, in a letter dated October 23, 1969, Dr. Demmy, a psychiatrist, states:

"She is quite dependent on the son and his family requiring emotional support for her dependency feelings with her inability to handle her own affairs and emotional needs.
Thus his removal from the family would not be beneficial to her and could lead to a recurrence of her psychotic episodes."

In addition, the mother's psychiatrist in Florida, Dr. von Ruckteschell, has also attested to the fact that the mother needs the support and care of another or a relapse could occur. In a letter dated July 1, 1969, Dr. von Ruckteschell noted that the mother needed the petitioner's support and care. In a subsequent letter of October 22, 1969, the mother's psychiatrist further stated:

"Please be advised that it is of essential necessity for the health and welfare of Mr. Brede's mother to have her son in the environment to care for her. She has been under my treatment for an Acute Schizophrenic Reaction on two occasions and she has nobody to depend upon since her husband died in June of 1969. If Mr. Brede's mother had to care for herself it would be very likely that she would soon relapse without any support and dependence."

The above letters from the mother's psychiatrists clearly show that the mother's relapse would be precipitated by a lack of support and care. However, neither the petitioner nor the above letters have shown that *only* the petitioner could satisfy the mother's dependency needs and supply the necessary support and care in light of the fact that the mother has other children besides the petitioner. The selective service file reflects that the petitioner has five adult half-brothers and half-sisters. Four of them have known addresses. The petitioner has not shown that the other four siblings could not supply the emotional support and care for the mother, albeit they could not support the mother financially. The Court notes that the ability of brothers and sisters to support the mother is one of the determinative factors in a hardship deferment case. See deRozario v. Commanding Officer, Armed Forces Examining and Induction Station, 390 F.2d 532, 537 (9th Cir. 1967); Carlson v. United States, 364 F.2d 914, 916 (10th Cir. 1966). Since the petitioner has failed to show that the other sib-

lings could *not* take care of his mother, a prima facie case of extreme hardship has not been made out.[5] It of course would be a different story if the petitioner was the sole child. Since he is not, he cannot claim extreme hardship unless he overcomes the assumption that his half-brothers and half-sisters could also handle the mother's affairs and her emotional needs. Therefore, the Court finds that there is a basis in fact for the Board's refusal to reopen the petitioner's classification inasmuch as the petitioner did not present a prima facie case that he was entitled to a hardship deferment. For the foregoing reasons, then, the petitioner was not denied due process of law when the Board refused to reopen his classification. Hence his induction order was valid.

Furthermore, the Court notes that the selective service file reflects that the petitioner sought a hardship deferment upon two separate grounds—*i. e.* emotional and financial—and upon three separate occasions. Thus, the file reflects that when the petitioner was unsuccessful with the emotional ground for his deferment, he requested a deferment upon financial grounds. In turn, when the financial hardship deferment did not materialize, the petitioner reverted back to a claim for an emotional hardship deferment. Although the Board, at this time, may have been inclined to disbelieve the credibility of the petitioner, nonetheless, the file reflects that there was a basis in fact for the Local Board's denial of the emotional hardship deferment and for its refusal to reopen the petitioner's classification. Consequently, the petitioner was not denied due process of law and after having a series of deferments, cannot now shirk his responsibility of serving in the Armed Forces of the United States.

## SECOND CAUSE OF ACTION

■ The petitioner contends that his induction was illegal upon another ground. He alleges that the Board violated the terms of 32 C.F.R. § 1631.7(a) [6]

(1) Delinquents who have attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

(2) Volunteers who have not attained the age of 26 years in the sequence in which they have volunteered for induction.

(3) Nonvolunteers who have attained the age of 19 years and have not attained the age of 26 years and who (A) do not have a wife with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first, or (B) have a wife whom they married after the effective date (August 26, 1965) of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first.

(4) Nonvolunteers who have attained the age of 19 years and have not attained the age of 26 years and who have a wife whom they married on or before the effective date (August 26, 1965) of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first.

---

5. The Court does find that the petitioner presented a prima facie case to his Board that there was a change in his status resulting from circumstances over which he had no control, namely, his mother's two mental breakdowns and the death of his father. Due to this Court's finding that the petitioner did not present a prima facie case to his Board that he was entitled to a hardship deferment, the above finding in reference to changed circumstances is of no avail to the petitioner.

6. When a call is placed without designation of age group or groups, each local board, upon receiving a Notice of Call on Local Board (SSS Form 201) from the State Director of Selective Service (1) for a specified number of men to be delivered for induction * * * shall select and order to report for induction the number of men required to fill the call from among its registrants who have been classified in Class I–A and Class I–A–O and have been found acceptable for service in the Armed Forces and to whom the local board has mailed a Statement of Acceptability (DD Form 62) at least 21 days before the date fixed for induction * * * Such registrants * * * shall be selected and ordered to report for induction in the following order:

in drafting him after he had reached the age of 26 without first exhausting the supply of registrants between the ages of 19 and 26. The argument develops in the following manner: The petitioner received his induction notice of January 21, 1969 prior to his twenty-sixth birthday. Under the provisions of 32 C.F.R. § 1631.7(a), it was proper to induct the petitioner inasmuch as the petitioner was not 26 at the time of his induction notice. Consequently, his call was valid in this regard. However, the petitioner fully complied with the January 21, 1969 induction order on February 4, 1969 and exhausted said induction order when he was disqualified upon medical reasons. After February 4, 1969, he was over the age of 26. Any subsequent induction order, according to the petitioner the ones of July 25, 1969 (to report on August 6, 1969), September 18, 1969 (to report on October 1, 1969) and September 23, 1969 (to report on October 28, 1969) were invalid since there were men available in the 19 to 26 age group. (The respondents have stipulated that the above age group was not exhausted at the time the petitioner received subsequent letter orders to report for induction.) In summary, then, the petitioner contends he exhausted the January 21, 1969 induction order and any order thereafter was illegal and void since the pool of registrants between the ages of 19 and 26 was not exhausted for the subsequent induction orders.

At this juncture, a review of the processing of the petitioner's induction orders is in order. On January 21, 1969, the petitioner was ordered to report for induction on February 4, 1969. The petitioner did comply with this order on the above date. However, the petitioner was not inducted on that date because of a temporary illness. Later, the petitioner was ordered to report for another physi-cal examination on April 8, 1969 and petitioner did pass this examination. After a review of the petitioner's file, the petitioner was ordered again to report for induction on August 6, 1969 in a letter order dated July 25, 1969. The letter order noted that his induction was ordered pursuant to his February 4, 1969 induction. On July 28, 1969, the petitioner requested that his induction be postponed. It was postponed on August 1, 1969. After the petitioner's file was reviewed again, the petitioner was once again ordered to report for induction in letter orders of September 18 and 23. The letter order of September 18 stated that pursuant to the August induction which was postponed, the petitioner was ordered to report for induction on October 1. The letter order of September 23 apparently cancelled the September 18 letter order and ordered the petitioner to report for induction on October 28, 1969. This September 23 letter order also made reference to the prior postponement of the petitioner's induction.

From the above situation, the ultimate question for this Court to decide is whether or not the induction order of January 21, 1969 was exhausted. If the order was not exhausted but still outstanding, as the respondents contend, the petitioner had a continuing duty to report for induction. Hence, the subsequent letter orders of July 25, September 18 and 23 would be valid since they would be predicated upon the January 21 order with which the petitioner had a continuing obligation to comply and which did not violate the petitioner's statutory right to a lower priority under the terms of 32 C.F.R. § 1631.7(a). (It will be recalled that the petitioner was under the age of 26 at the time the January 21 order was issued.) If the order was exhausted, on the other hand, the petitioner would not have a continuing duty to re-

(5) Nonvolunteers who have attained the age of 26 years in the order of their dates of birth with the youngest being selected first.

(6) Nonvolunteers who have attained the age of 18 years and 6 months and who have not attained the age of 19 years in the order of their dates of birth with the oldest being selected first. 32 C.F.R. § 1631.7(a).

port for induction. Thus, instead of being based upon the January 21 induction order, the letter orders would have to stand in their own right. These letter orders could not so stand in that they would be issued at a time when the petitioner was over the age of 26 and when the pool of registrants between the ages of 18 and 26 had not been exhausted. Hence, these letter orders would be invalid since they would have violated the petitioner's statutory right to a lower priority under 32 C.F.R. § 1631.7(a).

The Court finds that the induction order of January 21 was not exhausted. Consequently, the subsequent letter orders are valid and in turn, the petitioner's induction into the Armed Forces.

■ The Court feels that the exhaustion of an induction order appears to be controlled by 32 C.F.R. § 1632.30. According to 32 C.F.R. § 1632.30,

"Upon receiving notice from the induction station that a selected man who has been forwarded for induction has been inducted or finally found not qualified for service in the Armed Forces, the local board shall reopen his classification and classify him anew."

In the case at bar, the petitioner was not "finally found not qualified for service" on February 4, 1969 inasmuch as the record reveals that the petitioner had a temporary illness of active fluenza on that day which necessitated the petitioner's re-examination. In a sense, then, the petitioner was only conditionally or temporarily rejected but was not finally found unqualified for military service. See Battiste v. United States, 409 F.2d 910 (5th Cir. 1969). This conditional rejection did not cancel the induction order of January 21, 1969. *Id.* at 916. Since the induction order was not exhausted nor cancelled, the Court feels that the petitioner had a continuing duty to report for induction and no new, formal induction order had to be issued. Instead, a letter order would suffice. Although there is no regulation directly on point, an analogy can be drawn to the

provisions dealing with postponement of induction. These provisions provide the following:

"A postponement of induction shall not render invalid the Order to Report for Induction (SSS Form 252) which has been issued to the registrant but shall operate only to postpone the reporting date and the registrant shall report on the new date without having issued to him a new Order to Report for Induction (SSS Form 252)." 32 C.F.R. § 1632.2(d).

" * * * If the time when the registrant is ordered to report for induction is postponed, it shall be the continuing duty of the registrant to report for induction upon the termination of such postponement and he shall report for induction at such time and place as may be fixed by the local board. * * " 32 C.F.R. § 1632.14.

Thus, if there is a postponement of an induction order, a new induction order need not be issued but the initial order remains valid. Furthermore, after a postponement, the petitioner has a continuing duty to report for induction. The Court feels that a distinction cannot be made between a postponement of induction and one in which there is a delay as in the case at bar. In both cases, the induction is temporarily deferred. In both situations, the deferment of induction is caused by extenuating circumstances beyond the control of the registrant, namely, an emergency, sudden death or temporary illness. Therefore, an analogy between a postponement and a delay of induction seems appropriate in the case at bar.

For the foregoing reasons, then, the Court finds that the petitioner was not illegally inducted into the Armed Forces. He was not denied due process of law in the Board's refusal to reopen his classification nor were his rights violated when he was formally inducted after his twenty-sixth birthday.

Therefore, the Court denies his petition for a writ of habeas corpus. All former orders requiring the petitioner

to remain in the jurisdiction of this Court during the pendency of this proceeding are hereby rescinded. The respondents can now assume full command over the petitioner. This case is now terminated.

It is so ordered.