**Marshall F. GARRELL**

v.

**COMMANDING OFFICER, Commander Thomas M. Volatile, etc. and Secretary of Defense.**

**Civ. A. No. 70-390.**

United States District Court,
E. D. Pennsylvania.

April 15, 1970.

John D. Egnal, Philadelphia, Pa., for plaintiff.

Jeffrey Miller, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Marshall F. Garrell, Jr. was inducted into the Armed Forces of the United States on February 6, 1970. On the same day he filed this petition for writ of habeas corpus seeking release from the Armed Forces on the ground that the order under which he was inducted was issued in violation of the Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq., and the regulations promulgated pursuant thereto. Petitioner's complaint is that the local draft board failed to reopen his classification, as it was allegedly required to do under § 1625.2 of the Selective Service Regulations, 32 C.F.R., to consider whether his I–A status should be changed to II–A [1]

---

1. *Essential Occupation* § 1622.22(a) :
 "In Class II-A shall be placed any registrant whose employment * * * or other endeavors is found to be necessary to the maintenance of the national health, safety or interest."

(occupational deferment) or III-A [2] (hardship deferment). A temporary restraining order was issued to prevent respondents from removing petitioner from the jurisdiction of this court pending hearing and disposition of this petition.

Hearing has been held. From the evidence submitted, the following facts emerge:

Marshall F. Garrell, Jr., registered with Local Board No. 59, Upper Darby, Pennsylvania in January 1966. At that time Garrell was a student at the Philadelphia College of Pharmacy and Science and he was accordingly classified II-S (student deferment). The course of study at the College of Pharmacy was completed in June 1969. On July 10, 1969 the local board (Board) reclassified Garrell I-A and mailed to him notice of the classification and of his right to appeal. On the following day Garrell wrote to the Board requesting a personal appearance before the Board for the purpose of obtaining a six months' deferment to enable him to complete the internship required for a pharmacist's license. By letter dated July 23, 1969, the Board set July 31, 1969 as the date for personal appearance and advised Garrell that following that hearing he would receive a "Notice of Classification" which he could appeal within 30 days. When he personally appeared before the Board, Garrell was advised that his classification would remain I-A but if he was called for induction prior to the date of the final examination for his license the Board would postpone his induction for a sufficient period of time to enable him to get his "degree". Thereafter, on August 20, 1969, the Board mailed to Garrell notice that he had been classified I-A and informed him of his right to appeal that classification. No appeal was filed.

On November 18, 1969 the Board issued to Garrell its Order to Report for Induction on December 2, 1969. At Garrell's request, the Board sought and obtained from the State Selective Service Headquarters permission to postpone induction until February 1970 to enable Garrell to complete the internship and qualify for state licensure.

By letter dated January 22, 1970 Garrell was ordered to report for induction on February 6, 1970. On January 23 Garrell delivered to the Board a letter (dated January 22, 1970) advising that his father, in whose pharmacy he had been working while going to school and while serving his internship, had severe hypertension and a circulatory disease of the legs; that the father had suffered from these conditions for five years and that it would be a hardship for his father to continue to work more than twelve hours a day. Enclosed with Garrell's letter was a note on a prescription blank of a Dr. Robert Mitterling, dated January 21, 1970, addressed "To Whom This May Concern" certifying that Garrell, Sr. "is under my professional care for severe essential hypertension, and arteriosclerotic occlusive vascular disease of the legs. Marshall, Jr. has been helping the father in their drug store." Also submitted were letters dated January 22, 1970 from Garrell, Sr. describing symptoms he had been suffering for five years, and from a Reverend Roy Grace, advising that Garrell, Sr.'s "physical condition has been deteriorating and he has been depending very heavily on the help his son has been able to give him" and "[i]f Marshall Garrell, Jr. is inducted into the service it is highly improbable that his father will be able to continue in business alone and it will become necessary for him to discontinue and move from the neighborhood."

On January 26, 1970 the registrant requested a personal interview to explain the claim that his induction would cause hardship to his father, mother,

2. *Hardship* § 1622.30(b):
"In Class III-A shall be placed any registrant whose induction into the armed forces would result in extreme hardship

* * * to his parent, grandparent, brother, or sister who is dependent upon him for support * * *."

younger brother and sister. By letter dated January 28,[3] 1970, the Board granted the interview and fixed it for February 2, 1970. Garrell was advised to prepare a written summary of the information he would discuss at that meeting.

The interview was held on February 2. Garrell submitted the requested written summary, setting forth therein that his father's diseases had worsened to the extent that he could no longer successfully mange and operate his pharmacy alone; that the pharmacy was open 80 hours a week and that the income from it was $9,932 which would not permit the hiring of a pharmacist 40 hours a week at $5 per hour to work under Mrs. Garrell's supervision; that the solution would be to permit petitioner to continue to work with his father to enable him to keep the pharmacy open.

The interview brought out this additional information: Garrell was working 60 hours a week for his father for which he was paid $15 a week; the father could not afford to hire anyone to take Garrell's place and would be unable to keep the pharmacy open without his help; the father owns, free of encumbrance, the building in which is located the pharmacy as well as the apartment in which the family lives; the father owns, subject to a mortgage, an adjoining building which contains an office, rented to a Doctor Marjorie Meyer, and an apartment, also rented. In response to a question from a board member, Garrell indicated that he had waited until the order of induction was issued before requesting a hardship deferment because he didn't think it was necessary to do so until he was licensed as a pharmacist and also because he did not realize how serious his father's condition was.

On February 3, 1970 the Board advised Garrell that his classification had been discussed and the Board had concluded that neither further postponement nor reclassification was warranted and he was therefore ordered to report for induction on February 6, 1970, as scheduled. On that same date (February 3), Garrell, having been advised that he had passed the laboratory examination and qualified for a pharmacist's license, requested that his case be reopened to consider a II–A (occupational) deferment. On February 6, 1970, having received no response to his latest request, Garrell submitted to induction and filed the instant petition for writ of habeas corpus.

 Habeas corpus is a proper remedy for determining whether the procedure leading to an order of induction violated due process. United States ex rel. Lauritsen v. Allen, 154 F.2d 959 (8th Cir. 1946). The scope of review in Selective Service cases, however, is narrow. The action of a local board in classifying a registrant or in refusing to reopen a classification may only be disturbed if there is no basis in fact for the board's action. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Robertson v. United States, 404 F.2d 1141 (5th Cir. 1968); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Burlich, 257 F. Supp. 906 (S.D. N.Y. 1966).

 The Selective Service regulations provide not only for the right to appear before a local board in connection with classification of registrants, but also the right to appeal. Those rights are available whenever a classification is reopened, but there is no right to appear or to appeal where a reopening of classification is denied. If a request to reopen a classification is made before the registrant has been ordered to report for induction, the board must reopen "where new facts are presented which if true would justify a change in classification." United States v. Turner, 421 F.2d 1251 (3d Cir., filed Feb. 10, 1970).

3. The copy of the letter in the Board's file seems to be dated January 8, but the minute sheet reflects the date of mailing as January 28.

**390**

But if the request is made after the registrant has been ordered to report for induction, the registrant must establish that a change in his status, resulting from circumstances over which he had no control, has occurred. United States v. Kroll, 400 F.2d 923 (3d Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713 (1969).

The regulations governing the instant controversy are 32 C.F.R. §§ 1625.2 and 1625.4 which provide, in pertinent part:

"§ 1625.2 When registrant's classification may be *reopened and considered anew.*

The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.*" (Emphasis supplied)

"§ 1625.4 Refusal to reopen and consider anew *registrant's classification.*

When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required."

 In this case Garrell did not seek a reopening of his classification until long after he had been ordered to report for induction. The local board could not, therefore, reopen his case unless it first specifically found that there had been a change in his status resulting from circumstances over which he had no control. Further, it could only reclassify if such change of status was based upon facts, not known at the time of the earlier classification, which, if true, would justify a change in classification. If the facts not previously presented then make out a prima facie case for a different classification, the board's failure to reopen has no basis in fact and will be set aside. Petrie v. United States, 407 F.2d 267 (9th Cir. 1969).

*Hardship Claim (III–A)*

Garrell claims that he did make out a prima facie showing of change of status. His position is that he presented evidence that his father's health had so deteriorated after the November 18, 1969 order for induction issued that he could no longer operate his pharmacy without petitioner's help, and induction would cause extreme hardship to the father, mother, younger brother and sister. He claims that this was a prima facie showing of change of status and required reopening and that the Board's refusal to reopen constituted a denial of due process.

Stated in petitioner's own words "[t]he primary issue is whether the registrant met the 'change in circumstances' requirement"[4] and, with respect

4. Petitioner's Brief, page 5.

to the hardship claim, "[t]he question * * * is whether there was any change in the physical condition of the registrant's father after November 18, 1969, the date of the order to report for induction."[5]

The evidence which Garrell submitted to the Board in support of his claim, however, disclosed that the physical conditions causing the father's alleged disability had existed for at least five years prior to the date of issuance of the induction order. Dr. Mitterling's note contained nothing indicating that Garrell, Sr.'s condition was any worse after November 18, 1969 than it had been before that date, or that it was disabling. There was a letter from a minister which referred to the father's "deteriorating" state of health. Apart from questions as to the minister's competence to express an opinion on an essentially medical matter, the statement did not indicate what change, if any, occurred after the date of the induction order. From what was submitted to the Board, it appeared that Garrell, Sr., as late as January 1970, put in long hours at his pharmacy, as he had apparently done for many years, including the five during which he had suffered from hypertension and from circulatory problems in his legs.

■ Although the conditions from which the father suffered had existed for almost five years prior to July 1969, when Garrell was reclassified from II–S to I–A, Garrell made no claim on hardship grounds until the very eve of his postponed induction date. He had more than ample time and opportunity to notify the Board of his claim of extreme hardship. Having failed to do so, he was not entitled to have his classification reopened on the eve of induction. To require reopening under such circumstances "would be most anomalous since 32 C.F.R. § 1625.1(b) specifically requires a registrant to report to his local board 'within 10 days after it occurs * * * any fact that might result in

the registrant being placed in a different classification.'" United States v. Kroll, *supra*, 400 F.2d at 925.

The Board was justified in finding, as it obviously did, that there had been no "change in the registrant's status resulting from circumstances over which the registrant had no control." § 1625.2. It was necessary for the Board to first find such a change in status before it could consider whether the information submitted "present(ed) facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * *." *Ibid.* The refusal to reopen had a basis in fact and may not be disturbed. See United States v. Pence, 410 F.2d 557 (8th Cir. 1969); United States v. Ransom, *supra*.

■ Petitioner, in his original brief (p. 2), conceded that "[a] curtesy (sic) interview was held by the local board on February 2, 1970, at which time a decision was made not to reopen the petitioner's case." At oral argument, however, it was claimed that the Board, although stating that it had refused to reopen, had actually reopened, considered the merits and refused to change the classification, and thereby denied petitioner the review rights attendant reopening. All the evidence is to the contrary. The Board considered only that which was presented by Garrell in support of his claim. It was, of course, required to review the file and consider all the information submitted by petitioner to determine whether there had been a change in his status due to circumstances beyond his control. United States v. Kroll, *supra*. It could not ignore parts of the information (e.g. that the father's medical complaints were of long duration) simply because they did not bear out petitioner's claim of change in status. In that sense, of course, the Board was required to "evaluate" the information submitted, but such evaluation was the very function which § 1625.2 contemplated that the local board would per-

form in determining whether to reopen. United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368, reh. denied, 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967); Clark v. Volatile, 312 F.Supp. 426 (E.D. Pa., filed Feb. 20, 1970).

There is other evidence in the Board's file indicating that it had, in fact, refused to reopen. Its letter of February 3, 1970 was obviously issued with the intent to comply with the procedure prescribed in § 1625.4 for cases of refusal to reopen. Further, no vote of the members of the board was recorded, whereas in every other instance where Garrell's case was reopened for classification purposes (annually for the II–S deferment; on July 10, 1969 when he was classified I–A; and on August 20, 1969 when he was again classified I–A), the vote was recorded. I am satisfied that there was no *de facto* reopening of classification and consideration on the merits. *Cf.* United States v. Grier, 415 F.2d 1098 (4th Cir. 1969); United States v. Noonan, (3d Cir., filed April 3, 1970) (wherein the State Selective Service Director had expressly authorized a reopening.)

*Occupational Claim (II–A)*

On February 3, 1970, following the interview at which he made the claim of extreme hardship, Garrell wrote to the Board claiming an occupational deferment based on the fact that he had just been informed that he had passed certain examinations qualifying him for a pharmacist's license.

 To qualify for an occupational deferment for employment necessary to the maintenance of the national health, safety or interest, it must be established that the registrant is engaged in that activity; that he cannot be replaced because of a shortage of persons with his qualifications or skill in such activity; and that the removal of the registrant would cause a material loss of effectiveness in such activity (§ 1622.-23). No evidence whatsoever was tendered to the Board that there existed a shortage of persons with Garrell's qualifications or skill in the field of pharmacy. All that was submitted to the Board (and this in connection with the extreme hardship claim) was that it would cost more for Garrell, Sr. to hire someone to replace his son. The fact that the son was about to be licensed added nothing to that which the Board already knew concerning Garrell's case. The evidence submitted demonstrated neither change in status (Clark v. Volatile, *supra.*) nor the submission of new facts which, if true, would justify a change in classification. (*Cf.* Shook v. Allen, 307 F.Supp. 357 (N.D.Ohio 1969))

The petition for writ of habeas corpus will be denied.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a).