**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Noel Larry JACKSON, Defendant-
Appellant.**

No. 29445.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1972.

Thomas G. Lilly, Jackson, Miss., (Court appointed), for defendant-appellant.

Robert E. Hauberg, U. S. Atty., E. Donald Strange, Daniel E. Lynn, Asst. U. S. Attys., Jackson, Miss., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant Noel Larry Jackson appeals from his conviction in the district court for refusing, on August 21, 1969, to report for and submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C. App. § 462.

Jackson was classified I-A on June 13, 1966 and was given a physical examination and found medically qualified. However, he filled out a dependency questionnaire and was subsequently granted a III-A hardship classification, effective until July 15, 1967. On August 10, 1967, Jackson was reclassified I-A, but he again furnished documentation to establish his family's dependency and was reclassified III-A on September 21, 1967, to continue until October 1, 1968.

On October 9, 1968, without additional information in the file, Jackson was classed I-A again. Before Jackson took any steps to appeal this classification the clerk, on November 22, 1968, mailed him an order to report for induction on December 10, 1968. However, on December 6, 1968, Jackson's father telephoned the board clerk and informed her that a doctor had conducted tests and determined that the registrant suffered from functional hypoglycemia, a condition requiring a special diet to alleviate fainting spells.[1]

The clerk testified at the trial as to what she did with this information:

"The chairman of the local board was called and this was discussed with him and in as much as it had not been submitted prior to the orders for induction it was not required to be brought before the board members."

Following this, the doctor submitted a letter to the board in which he said, in part:

"[Larry Jackson] was referred to me by . . . a surgical associate of mine, for he was complaining of 'fainty spells' if he went too long without food. On 12/5/68 a four hour glucose tolerance was done which proved he has a functional hypoglycemia. It is therefore my opinion that he is unfit for military service at this time. He is now on a high protein, low carbohydrate diet, and will be rechecked in 6 months."

The following dialogue took place between the defense attorney and the clerk regarding the letter:

"Q. All right. Did you discuss this with the board?

---

1. Under the Selective Service regulations, it would arguably support a claim for a I-Y or IV-F classification, resulting in a draft deferment.

A. No sir. This information is only good to the examining doctor at Armed Forces Examining Station.

Q. So this was not brought to the board's attention?

A. That's correct."[2]

Appellant contends, *inter alia*, that the test and diagnosis of his condition occurred after the issuance of the order for induction and was the first time there was an indication that he had this defect, and thus it was a change in status "resulting from circumstances over which he had no control." 32 C.F.R. § 1625.2.[3] Appellant also contends that the failure of the clerk to transmit the information to the board was prejudicial and constituted a denial of his right to a medical interview by the board under 32 C.F.R. § 1628.[4]

■■ The clerk of the board indeed erred in failing to submit the information concerning Jackson's physical condi-

---

2. The doctor's letter was sent to the Armed Forces Examining Station and there reviewed during Jackson's physical examination on December 10, 1968, by Dr. Elliott Blau. Dr. Blau recorded an abnormality in the endocrine system diagnosed as functional hypoglycemia. He, nevertheless, found Jackson qualified for induction. Jackson was not inducted on December 10, because of a morals waiver. Eventually he was given a new reporting date of August 21, 1969, and it was his failure to report at that time which resulted in the conviction in question.

3. § 1625.2 When registrant's classification may be reopened and considered anew.

The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification: provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

4. Pertinent portions of the Regulation in effect at the time in question read as follows:

1628.1 Purpose of Medical Interview. —The Surgeon General of the Department of the Army shall, from time to time, prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces. A medical interview of certain registrants by the medical advisor to the local board shall be accomplished for the purpose of screening and disqualifying at the local board those registrants who have conditions or defects enumerated in the list.

1268.2 Registrants To Be Given Medical Interview.—(a) Whenever the local board is of the opinion that a registrant in Class I-A, Class I-A-O, or Class I-O has one or more of the disqualifying medical conditions or physical defects which appear in the list described in section 1628.1 it *shall* order the registrant to present himself for medical interview at a specified time and place by mailing to such registrant a Notice to Registrant to Appeal for Medical Interview (SSS Form 219).

(b) Whenever a registrant who is in Class I-A, Class I-A-O, or Class I-O claims that he has one or more of the disqualifying medical conditions or physical defects which appear in the list described in section 1628.1, the local board *shall* order him to present himself for interview with the medical advisor to the local board at the time and place specified by the local board by mailing to such registrant a Notice to Registrant to Appeal for Medical Interview (SSS Form 219). [Emphasis supplied.]

These provisions have since been amended by Executive Order 11553, 35 Fed.Reg. 13719 (Aug. 28, 1970). The medical interview is now within the discretion of the local board.

tion to the entire board for consideration. It is for the local board and not the clerk to determine the merits of classification questions. Battiste v. United States, 409 F.2d 910 (5th Cir. 1969); United States v. Ford, 431 F.2d 1310 (1st Cir., 1970). This court has often viewed with disfavor a draft board's failure to follow its own Regulations. United States v. Bagley, 436 F.2d 55 (5th Cir., 1970). The clerk apparently misunderstood the law in stating that the "information is only good to the examining doctor at Armed Forces Examining Station."

██ Under 32 C.F.R. § 1625.2, information submitted after an order for induction is sufficient for reclassification under specified circumstances. The Supreme Court, in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), determined that under this Regulation the local board must reopen a classification whenever a prima facie case for a different classification is made. Only by reopening a classification and determining the issue anew on the merits can the registrant's right to a personal appearance and administrative appeal be assured on substantive issues. Of course, *Mulloy* involved a reopening *before* an induction order. 32 C.F.R. § 1625.2 provides that after an induction order is mailed a classification shall not be reopened "unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." Determining whether a change results from circumstances beyond the registrant's control is clearly a substantive issue. When information arguably meets this requirement, the board itself must determine whether the standards in the Regulations have been met. It cannot properly fail to perform this function by allowing one of its members or the clerk to make the decision. If the board finds that the information does meet the requirement of a change due to circumstances beyond control, and that it makes a prima facie case for deferment,

then the board must reopen the registrant's classification even if it then decides on the merits against a different classification.

In Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), the Supreme Court has held that, in the case of conscientious objectors, a Selective Service local board need not reopen the classification of a registrant who claims that his conscientious objection to war in any form crystallized between the mailing of his notice to report for induction and his scheduled induction date. Appellant Jackson's case, however, is distinguishable for his claim did not involve conscientious objector status, but rather a medical condition. The Court, in *Ehlert*, apparently recognized such a distinction:

"The regulation we must interpret in this case . . . bars post-notice reopening 'unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.' *It is clear that the regulation was meant to cover at least such nonvolitional changes as injury to the registrant* or death in his family making him the sole surviving son." (Emphasis supplied.) 401 U.S. at 104, 91 S. Ct. at 1323.

See Grosfeld v. Morris, 448 F.2d 1004, 1011 (4th Cir., 1971).

We need not decide whether the facts in this record entitle Jackson to a post-induction-order deferment on grounds of physical unfitness. This court has held that the failure of a board to consider the post-induction-order claim to be harmless when it was *clear* that there was no change due to circumstances beyond the registrant's control. See Battiste v. United States, 409 F.2d 910 (5th Cir., 1969). In the instant case there is no such factual or legal clarity. It seems that Jackson first sought medical diagnosis after the order to report. It is unclear how long he had been experiencing the symptoms that led him to seek medical advice.

The law on what constitutes a change due to circumstances beyond control is undeveloped with respect to medical disabilities. Many of the cases dealing with medical reasons for deferment concern the health of others than the registrant. Thus, in Lentine v. Hollingsworth, 308 F.Supp. 317 (D.S.C., 1970), the court found that the registrant's post-order marriage to an emotionally dependent woman was not a circumstance beyond control, because the registrant knew her emotional condition before he married her. In Garrell v. Commanding Officer, 312 F.Supp. 386 (E.D. Pa., 1970), the court found that the disease of the registrant's father—on which a claim of economic dependence was based—had been known and treated by a doctor for five years. On the other hand, the court in Brede v. Allen, 311 F.Supp. 599, 606, n. 5 (N.D.Ohio, 1969), noted that the death of the registrant's father and the emotional breakdown of his mother after the order for induction were circumstances beyond his control.

But there are certain possible questions left open in appellant Jackson's situation. Must the symptoms of a disqualifying disease begin after the induction order to qualify? Or is it sufficient, if the symptoms preexisted the order, that the registrant did not then subjectively realize that he suffered from a serious physical malfunction and that he became aware of the seriousness of the problem and sought medical advice only after the order for induction?

■ We think it is for the local board in the first instance to determine the issues of fact and the interpretation of the Regulations. It is not for the courts to first rule on an arguable claim for a deferment when the board has failed to consider the issue or has applied the wrong standard. We do not indicate what the board should decide upon reconsideration of Jackson's classification. We hold simply that he presented an arguable case and that the board, which has great discretionary authority, must first fulfill its responsibility by considering whether the information meets the standards set out in the Regulations.

■ The Government argues that the registrant was not prejudiced because the medical information was forwarded to the Armed Forces Entrance and Examination Station, but the registrant had a right to have this information considered by the Selective Service system. United States v. Mathews, 450 F. 2d 439 (1st Cir., 1971); United States v. Ford, *supra*, 431 F.2d at 1313. See United States v. Polites, 448 F.2d 1321 (3rd Cir., 1971).[5]

5. In *Polites* a local board, after granting a personal interview relating to a hardship deferment, asked for a more detailed financial statement of household income and expenses, but the same day reclassified the registrant I–A, three days before the financial statement was received. The court reversed the conviction for failure to report for induction, holding that the deficiency in the local board's procedure was not cured by the action of the appeal board, even though the latter did consider the financial statement and the entire record. The court summarized its view as follows:

"As the Ninth Circuit has pointed out, an 'underlying concept of the Selective Service System is that those subject to call for service in the armed forces are to be classified by their neighbors—people who are in a position to know best their backgrounds, their situation and activities.' *See* Knox v. United States, 200 F.2d 398, 402 (9th Cir. 1952). The registrant here was deprived of the opportunity for such local consideration of all relevant materials. As we pointed out hereinabove, the new information submitted to the Local Board might or might not have convinced reasonable men that the registrant should receive a hardship deferment. Since the Local Board had personally spoken to the registrant and had requested additional information, its decision might well have gone the other way.

"This court in United States ex rel. Berman v. Craig, held that a local board's failure to consider new information 'was not cured by its action in transmitting Berman's file to the appeal board for review.' 207 F.2d 888, 891 (3rd Cir. 1953). More recently, in United States v. Brown, we held that an appeal board may not base its deci-

Because this error invalidates the order for induction, the judgment of conviction and sentence is reversed and the case is remanded to the trial court with directions to dismiss the indictment.

sion on information which was not previously considered by the local board. 436 F.2d 1317 (3rd Cir. 1971). To the same effect is United States v. Zieber, 161 F.2d 90, 91–93 (3rd Cir. 1947), cert. denied 333 U.S. 827, 68 S.Ct. 454, 92 L.Ed. 1112 (1948). *See also* United States v. Stepler, 258 F.2d 310 (3rd Cir. 1958). The *Berman, Zieber* and *Brown* cases control in this circuit. Decisions in other circuits are in accord. *See, e. g.,* United States v. Atherton and the cases collected in that opinion, 430 F.2d 741 (9th Cir. 1970). In United States v. Ford, Judge Coffin wrote,

" 'If the reposing of discretion in the board is to have meaning and substance, it must be that the facts prerequisite to the exercise of judgment should come to its attention.

\* \* \* \* \*

" 'Let it suffice to say that the lodging of broad discretion in local Selective Service boards carries the concomitant duty of its exercise and that such exercise is predicated upon consideration of available information.' " 448 F.2d at 1324–1325.