**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Sol LEVY, Defendant-Appellant.**
**No. 72-1676.**

United States Court of Appeals,
Ninth Circuit.

Nov. 15, 1972.

Barry J. Portmann, Pacific Palisades, Cal. (argued), Michael J. Lightfoot, Michael P. Balaban, Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Robert C. Bonner, Asst. U. S. Atty. (argued), Barbara Meiers, William R. Hawes, Asst. U. S. Attys., William D. Keller, U. S. Atty., for plaintiff-appellee.

Before MOORE,* MERRILL and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The appellant stands convicted upon all three counts of a three-count indictment for violation of the Selective Service Act, 50 U.S.C. § 462. Count I charged a failure to report for physical examination on July 13, 1970, as ordered; Counts II and III charged failures to comply with orders to report for induction on December 1, 1970, and on May 5, 1971, respectively. He appealed all three.

■ Appellant contends that the order to report for a physical examination on July 13, 1970, which he did not obey, had been canceled by a subsequent order to report for examination on September 4, 1970, which he did obey. The same argument received the attention of this court in United States v. Maybury, 453 F.2d 1233 (9th Cir. 1972). We there said:

"This contention is answered by United States v. Wilson, 427 F.2d 649 (9th Cir. 1970). There we held quite succinctly that a board action after the offense has been committed does not erase the offense:

'The most it [draft board letter] could do . . . would have been to have terminated defendant's continuing violation *as of the time it was written*. But it could not have retroactive effect . . .' (emphasis in the original) 427 F.2d at p. 650.

"White v. United States, 442 [422] F.2d 1254 (9th Cir. 1970), which Maybury urges, is not in point. Cf. United States v. Martinez, 427 F.2d 1358 (9th Cir. 1970), cert. denied 400 U.S. 879, 91 S.Ct. 122, 27 L.Ed.2d 117 (1970)." 453 F.2d at 1235.[1]

We hold that this case is controlled by *Maybury* and that the conviction on the first count must be affirmed.[2]

On November 19, 1970, appellant was sent an order to report for induction on December 1, 1970. His failure to obey

---

* Honorable Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. We note that in White v. United States, 422 F.2d 1254 (9th Cir. 1970), a registrant was *indicted and convicted* upon failure to obey a second order to report for civilian work. Immediately after the conviction the government dismissed an earlier indictment for failure to obey a similar order.

2. Appellant's reliance upon Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), and particularly a statement by Mr. Justice Stewart therein at page 316 is not apposite. The Court was there concerned with the delinquency regulations of the Selective Service Act, 32 C.F.R. § 1642.4 providing that a local board may declare a registrant to be a "delinquent" for failure to comply with certain duties under the Selective Service Law. In such event he could be reclassified as I–A, I–A–O or I–O, or he could be deprived of his previous standing in the order of call.

Here we are not concerned with mere tardiness resulting in a specific penalty of accelerated induction, but with the violation of a duty for which the law imposes a criminal penalty.

this order resulted in his indictment and conviction under Count II. Appellant contends that his right to procedural due process was violated because the local board failed to properly consider a medical claim. The chronology of events from his Selective Service file is helpful to a determination of this claim.

Levy was classified I–A on March 6, 1970. He took no appeal from this classification.[3]

An order of April 27, 1970, to report for a physical examination on May 11, 1970, was excused because he had the flu.

On May 1, 1970, a letter signed by appellant's mother was received by the board stating that the registrant had claustrophobia.

He failed to report in obedience to a second order for a physicial examination on July 13, 1970, which is the subject of Count I. He did report for a physical examination following a third order to do so, and was found acceptable on October 15, 1970.

His subsequent failure to report for induction on December 1, 1970, as ordered, is the subject of Count II of the indictment of September 29, 1971, and the conviction now under consideration.[4]

The first basis of the claim of lack of procedural due process is that "there is no indication that the medical claim of claustrophobia mailed to the board by the defendant's mother on May 1, 1970, was ever brought to the attention of the board itself, or any of the board members." As the government is quick to point out, there is no indication that the claim was not brought to the attention of the board and there is a presumption of the regularity of the board's proceedings. United States v. Neckels, 451 F.2d 709 (9th Cir. 1971); United States v. Carson, 449 F.2d 345 (9th Cir. 1971). United States v. Jackson, 454 F.2d 821 (5th Cir. 1972), relied upon by appellant, is readily distinguishable. There defense counsel on cross-examination of the clerk of the board established that the claimed disabling condition had not been called to the attention of the board. Here there was no such testimony or evidence *aliunde*. On the contrary there is evidence that the claimed condition was called to the attention of the examining board and considered by that group, when registrant finally reported for his physical examination on September 4, 1970.[5]

The remaining question is whether the letter of May 1 written by

---

3. In his classification questionnaire he stated that he had no physical or mental condition which would disqualify him for service in the Armed Forces.

4. Later, on March 3, 1971, Levy submitted a "Current Information Questionnaire" with his own letter asserting claustrophobia, and on March 4, 1971, a letter from Dr. Alvin Davis confirming this condition. This information was interposed defensively to the continuing duty order of March 4, 1971, to report for induction on March 24, 1971, failure to obey which was the basis for Count III.

5. The medical report which reflected the September 4, 1970, physical examination noted on page one, "Claustrophobia alleged," and a "N.P. [neuropsychiatric]

consultation." At the appropriate space for findings there is. written:
"No N.P. care *at any time*. Alleges 'claustrophobia' since age 13–14 (mother has had *similar* symptoms since she was 18). Claims fear of being in elevators and must sleep [with] windows open. Parents separated when he was 15, and he continued to live [with] mother, elder brothers, and younger sister. Has dated since 17; alleges good social life. Working 2 years as bin loader at Sears, [with] good record. No sig. anxiety noted here, but there is a suggestion of immaturity. No arrests. This examiner feels alleged 'claustrophobia' is not sig., since he has never sought treatment, and reveals no anxiety here." Exh. 1 at 52.

the registrant's mother [6] made a claim on behalf of registrant within the intendment of section 1628.2(b) so that the local board was required to order him to present himself for interview with the medical advisor. It did only if it made a claim of a medical condition or physical defect that disqualifies one for service in the armed forces according to the list prescribed by the Surgeon General, section 1628.1.

Appellant does not assert that "claustrophobia" is a disqualifying condition specifically designated by name by the Surgeon General. Rather, the argument is that it is a "personality disorder" under section 2–34 of that regulation. Section 2–34 lists four types of such personality disorders:

(a) Character and behavior disorders including (1) frequent encounters with law enforcement agencies, or antisocial attitudes, (2) homosexuality, (3) alcoholism, (4) drug addiction.

(b) Character and behavior disorders where it is evident by history and objective examination that the degree of immaturity, instability, personality inadequacy, and dependency will seriously interfere with adjustment in the military service as demonstrated by repeated inability to maintain reasonable adjustment in school, with employers and fellowworkers, and other society groups.

(c) Other symptomatic immaturity reactions such as evidence of habitual or persistent enuresis and severe stammering or stuttering.

(d) Specific learning defects resulting from functional mental disorders.

We fail to see in the May 1 letter any facts which would bring appellant's claims within the Surgeon General's classification of personality disorders. Certainly it was clearly not within (a), (c) and (d). As to (b), upon which appellant principally relies, giving full consideration to the fact that the letter was obviously not written articulately and crediting all inferences from it in favor of appellant's contention, it simply does not assert that the claimed phobia is one which prevents him from maintaining "reasonable adjustment in school, with employers and fellow workers, and other society groups." The neuropsychiatric consultation during the course of the AFEES examination confirms this conclusion. No reference of appellant to a medical advisor was therefore required.

The record remained in this condition until after December 1, 1970, when the appellant failed to report for induction as he was ordered to do on November 19, 1970. The letter from Dr. Davis in support of the claustrophobia claim was not written to the local board until March 4, 1971. At this time the offense of failure to report for induction on December 1, 1970, was already complete.

Appellant was sentenced to two years in the custody of the Attorney General on each of the three counts for which he was convicted, the sentences to run concurrently. Sentence was suspended, and the appellant was placed on probation for the two years with the requirement that he perform work of national importance.

The judgment is affirmed.

---

6. This letter, copied as written, states:

"Dear Sir,

"This is to reform you that Robert Levy, my son has Cluaftropbia

"He had it for many years Although he never talked about it.

"And believe me this is something not to brag about.

"The feeling is he can't stand to be in a room with lots of people, also he has to sleep near a open window or else he thinks he is suffeacating.

"Please look into this matter as quick as you can,

"He is suppost to appear May 11 At your local Broads,

"the number is 4–107–47–417

"Thank you, hoping to hear you soon,
"Mrs. Levy
"Tel AN 31425"

Exh. 1 at 20.