Mark B. LANDAU, Petitioner-Appellant,

v.

Colonel Arthur ALLEN, Respondent-Appellee.

No. 19827.

United States Court of Appeals, Sixth Circuit.

April 20, 1970.

Niki Z. Schwartz, Cleveland, Ohio, for appellant.

Timothy J. Potts, Asst. U. S. Atty., Cleveland, Ohio, Robert B. Krupansky, U. S. Atty., Cleveland, Ohio, on the brief, for appellee.

Before WEICK and EDWARDS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WEICK, Circuit Judge.

Petitioner, Mark B. Landau, was inducted into the United States Army on July 1, 1969. He applied to the District Court for a writ of habeas corpus, seeking his release from the Armed Services on the grounds that (1) there was no basis in fact for his I–A classification by the Appeals Board and that he should have been classified III–A because his mother was economically and emotionally dependent upon him, thereby creating an extreme hardship; and (2) that he was denied procedural due process by his local Board.

The District Court gave careful consideration to the contentions of petitioner in a 17-page memorandum, and denied his application for a writ of habeas corpus. Petitioner appeals. We affirm.

Petitioner registered with his local Board on October 31, 1962. On June 24, 1964, he was granted a 2–S classification since he was enrolled as a full-time college student. His 2–S classification remained in effect until his graduation from college in August, 1968. Petitioner's father died in 1965.

After his father's death, petitioner remained in college until his graduation, during which time he was supported by his mother, whom he now claims as his dependent. On May 20, 1968, he filed a dependency questionnaire with the Board. His mother had an income of about $2,210 per year from an annuity. At that time petitioner had not contributed anything to his mother's support, but was being supported and educated by her. He had planned, however, to go to work immediately upon graduation in August, 1968, and then to contribute partially to her support. Both petitioner and his mother had been living on the mother's pension and her savings.

On September 9, 1968, a second dependency questionnaire was filed by petitioner with his local Board. The information therein regarding the dependency of his mother indicated an annual income of $2,200 received by her, and an expectation by petitioner that he would contribute his total annual income to her, which he estimated would be approximately $4,000. The only other member of his family was his brother, who was unable to contribute to the mother's support because he was a student in Israel and was unemployed.

On September 1, 1968, petitioner was classified I–A. On October 14, 1968, he notified his local Board that he protested his reclassification, and requested a personal appearance before the Board, which was granted. He appeared before the local Board on November 13, 1968. At that time he submitted a written statement, stating that his mother was emotionally and psychologically, as well as

economically, dependent upon him. Petitioner also submitted certain documentary material. A schedule of expenses of Mrs. Landau indicated her total monthly expenses were $313.65; Mrs. Landau's monthly income was shown to be $213.06, consisting of a Government annuity of $191.19, and interest of $21.87 monthly on a $5,000-savings account. The financial statement reflected a contribution requirement on the part of petitioner of $100.59 to meet her projected monthly expenses. A second schedule was submitted showing that Mrs. Landau had received $12,500 upon the death of her husband, of which sum $12,444 had been expended, in part as follows: $4,200 sent to petitioner's brother, Robert Landau; $2,915 consumed in the education of petitioner; and $2,361 as money withdrawn by her from the bank to supplement her income.

Petitioner was classified I–A following his personal appearance before the local Board. A summary of petitioner's personal appearance, as prepared by the Board, is as follows:

"Registrant sworn in. Requested dependency deferment. Graduated from Kent State University August, 1968. Commuted back and forth to Kent State.

"Father deceased June 28, 1965, certificate on file. Insurance money and money from sale of home amounted to $12,500.00. Money on hand $5,000.-00. Rent for two-bedroom suite, $120.00. Mother receives Government pension of approximately $191.00 monthly. Itemized statement of expenses on file.

"M.D. letter covers mother, Mrs. Anne Landau, from Dr. Otto Wellner.

"Mother contributed $4,200.00 to Robt. Landau's education (May 7, 1939–371) classified I–A and presently out of the country. Has not served in any branch of Service. Has been out of country for three years and not in contact with mother. Does not contribute to support of mother in any manner. Mother out of touch with her side of family, has three brothers and one sister, and out of contact with her husband's family. Mark is living at home with mother.

"Family has 1964 Chevrolet. Mother drives but Mark has use of car for business purposes.

"Board granted appearance to mother, Mrs. Anne Landau (she had accompanied Mark to the office). She confirmed statements made by Mark. She did state that should [sic] would not be able to adjust to being alone. She is not employed.

"Mark contributes to up keep of apartment."

Petitioner appealed the I–A classification to the Appeals Board. On February 4, 1969, petitioner was classified I–A by unanimous vote of the Appeals Board. The local Board file which was transmitted to the Appeals Board included the following: (1) Petitioner's written statements that his mother was economically and emotionally dependent upon him; (2) Letters submitted to the local Board from Mrs. Landau's physician and friends, indicating that she was unemployable and that there was extreme emotional dependency toward her son; (3) Financial statements indicating that the mother's monthly income was $213.06, and her expenses were $313.65 per month, and that $100 a month from her son would be necessary for her economic support; and (4) The local Board's summary of the personal appearance.

Petitioner and his mother had prepared and filed with the local Board written résumés of their personal appearances before that Board. These résumés were lost during their transmittal to the Appeals Board and were never considered by it. Petitioner contends (1) that he was denied procedural due process because the résumés reflected the fact that his I–A classification by the local Board was a consequence of prejudice and of failure to apply proper legal standards, and (2) that the Appeals Board was deprived of the opportunity to evaluate properly his draft classification

due to the absence of the résumés from his file [1].

At best the résumés prepared solely by petitioner and his mother were their versions of at least part of what had transpired at their personal appearances. As found by the District Court, the résumés did not add any material fact pertinent to his III–A classification to the information already contained in the file which was actually presented to the Appeals Board [2].

Petitioner's first contention is that there was no basis in fact for the denial of his claim for a deferment based on extreme hardship because of the economic and emotional dependency of his mother [3].

The scope of judicial review of a Selective Service classification is exceedingly narrow, the sole question being whether a "basis in fact" exists for the classification given. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); see Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

Courts do not sit as super draft boards substituting their judgments on the weight of the evidence, nor should they look for substantial evidence to support such determinations. We look only to see if there was a basis in fact to support the ultimate classification. Dickinson v. United States, *supra*, 346 U.S. at 396, 74 S.Ct. 152.

From 1965 (when her husband died) until 1968 Mrs. Landau had supported herself and petitioner from the Government annuity and interest on a savings account which totalled $213.06 per month. Mrs. Landau withdrew from a savings account approximately $2,360 during the three-year period to supplement her income; however, there is no indication how the money was spent. Mrs. Landau submitted a financial statement indicating monthly income of $213.06 and monthly total expense of $313.65, which total, in addition to sums for food, clothing and rent, includes amounts for such items as hair care, television repair and entertainment. Although following graduation in August, 1968, and at least until he entered the service in July, 1969, petitioner supplied his mother with approximately $100 a month to supplement her monthly income, he was living with her and receiving room and board.

The local Board could have concluded that Mrs. Landau would have been able to live without "extreme hardship" on less than $313.65 per month. In addition, the Board could have taken into account the fact that petitioner would be paid for his service in the army and, therefore, could contribute at least minimally to his mother's support. We cannot say on this record that there is no basis in fact for petitioner's I–A classification.

Although there was evidence before the Board in the form of testimony and letters to the effect that petitioner's mother was emotionally dependent upon him, the question whether this constituted extreme hardship was for the Board to determine upon consideration of all of the evidence.

---

1. The claimed prejudice related to a statement alleged to have been made to petitioner by one member of the local Board, concerning petitioner's older brother, who had left the country without permission of his local Board, and who, although classified I–A, had never been inducted in the Armed Forces.

2. Petitioner asserts that the résumé is the only place wherein it is stated that the mother was physically unable to work; however, this information could also be found in the letters from her physician, and contained in the file before the Appeals Board.

3. "In class III–A shall be placed any registrant whose induction into the Armed Forces would result in extreme hardship (1) to his * * * parent * * * who is dependent upon him for support. * * *" 32 C.F.R. § 1622.30(b).

■ The burden was upon the petitioner, who is claiming a hardship deferment, to establish his right to this classification. We are of the opinion that the Board did not abuse its discretion in determining that petitioner failed to establish extreme hardship[4].

■ Petitioner's next contention is that he was denied due process because the local Board relied on erroneous standards of law in determining his classification[5] and that it was prejudiced against him as a result of the draft status of his brother.[6] Both of these allegations are reflected only in the résumés of the personal appearance as prepared by petitioner and his mother, which résumés were never received by the Appeals Board. We need not decide whether the local Board actually did apply erroneous standards, or whether an individual member showed personal bias, because the ultimáte I-A classification by the local Board was not explained by any written memorandum setting forth the basis upon which such determination was made[7].

■ Furthermore, the Appeals Board considers the classification de novo, 32 C.F.R. § 1626.26, and it is presumed that any error committed by the local Board is cured by a fair consideration on appeal. Clay v. United States, 397 F.2d 901, 912, 913 (5th Cir. 1968); Storey v. United States, 370 F.2d 255, 260 (9th Cir. 1966); DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965).

There was no proof that the Appeals Board applied erroneous legal standards in classifying petitioner I-A or that it exhibited any prejudice toward him. The alleged errors of the local Board could not have permeated the Appeal Board's decision, which as we have previously concluded, contained a basis in fact for the denial of the III-A classification.

Petitioner's final contention is that the failure to include in the record before the Appeals Board the résumés prepared by petitioner and his mother, renders the Appeals Board's classification fatally defective because of the denial of procedural due process. Petitioner's counsel stipulated that these résumés were "evidently lost" and he " * * * doesn't allege any bad faith on the part of the Selective Service System * * * "

32 C.F.R. § 1626.12 provides:

"The person appealing may attach to his appeal a statement specifying the matters in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or to give

4. Petitioner's reliance on Lewis v. Secretary, Dept. of Army, 402 F.2d 813 (9th Cir. 1968) is misplaced. That case involved a draft board's withdrawal of a III-A deferment when there was no significant difference in the facts before the Board between the time when it classified the registrant III-A in 1964 and when it classified him I-A in 1966. The Court held that he had established a prima facie case for continuance in that discretionary classification because the unexplained withdrawal of his III-A deferment without any change in circumstances amounted to suspicion and speculation amounting to an unwarranted reclassification. Lewis is inapplicable because we are not concerned with the withdrawal of a classification, but merely with the question whether there was a basis in fact to deny a requested deferment.

5. Petitioner contends that the résumés reflect the fact that some members of the local Board believed erroneously that petitioner was ineligible for a III-A classification on the basis that such classification is available only where the alleged dependent is a bedridden invalid, and further believed that petitioner's mother would receive a dependency allowance from the Government.

6. See footnote 1, *supra*.

7. For cases dealing with the different situation where there is either a written memorandum or testimonial evidence demonstrating the fact that an improper legal standard was a factor in establishing a draft classification, see Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Stepler, 258 F.2d 310 (3d Cir. 1958); Striker v. Resor, 283 F.Supp. 923 (D.C.N.J. 1968).

sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file."

It is the duty of the local Board to see to it that the record for the Appeals Board is complete. 32 C.F.R. § 1626.13 (b). Petitioner contends that the résumés were essential to demonstrate his contentions that the local Board applied erroneous legal standards, ignored his mother's emotional dependency, and was prejudiced against him because of his brother's draft status.

Usually the issue is whether a summary of oral information submitted by the registrant at his personal appearance and as prepared by the Board is substantially complete. The Courts have held that the failure to include complete summaries of oral testimony before the local Board does not constitute denial of due process where all the material relevant to the merits of the individual's classification was in writing in the file. Niznik v. United States, 173 F.2d 328, 334 (6th Cir. 1949); see Tyrrell v. United States, 200 F.2d 8, 11 (9th Cir. 1952); Cramer v. France, 148 F.2d 801 (9th Cir. 1945). We believe that this principle should be applied also to the situation where résumés submitted by registrant were lost and for that reason were not forwarded to the Appeals Board, the lost résumés having added nothing to that already in the file relevant to the classification.

The District Court found, and we agree, that the written résumés prepared by petitioner and his mother did not contain any facts relevant to petitioner's claim for III–A classification in addition to those facts already in the record by way of his written submissions relating to both the financial and emotional dependency of his mother. Failure to include these résumés in the file did not prejudice petitioner because the résumés did not add any material relevant to the merits of his claimed classi-

fication. There was no denial of procedural due process.

The judgment of the District Court denying petitioner's writ of habeas corpus is affirmed.