**UNITED STATES of America,**

v.

**Richard MANGONE, Defendant.**

**No. 71 Cr. 508.**

United States District Court,
S. D. New York.

Oct. 18, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; George E. Wilson, Sp. Asst. U. S. Atty., of counsel.

Frederick H. Cohn, New York City, for defendant.

## FINDINGS OF FACT AND OPINION

EDWARD WEINFELD, District Judge.

In this nonjury trial, the defendant is charged with refusal to submit to induction into the Armed Forces of the United States.[1] The defendant appeared at the Induction Center pursuant to a direction from his Local Board, based upon his I–A classification, but refused to comply with the order to take the symbolic one step forward. There can be no issue but that his action was knowing, willful and deliberate. However, he challenges the validity of his I–A classification. He contends that the Local Board impermissibly denied his application for either a III–A (extreme hardship) or a I–O (conscientious objector) reclassification, and further that he was not given a proper physical inspection at the Induction Center in accordance with required regulations, thereby voiding the order to step forward.

Upon the entire record, the Court finds that there was a basis in fact for the defendant's I–A classification—indeed, an overwhelming basis to uphold it; further, that there was ample support for the Board's rejection of his hardship and conscientious objector claims, the former of which was first presented after he had been classified I–A, and the latter only when his hardship claim failed; and finally, that the charge of procedural irregularity in the induction process is groundless.

■ We first consider the hardship claim. The defendant registered with his Local Board on June 18, 1964. He was granted a II–S classification on August 12, 1964, as a full-time student at Pace College, and was continued in that status beyond his graduation in September 1968.[2] On March 11, 1969, he was reclassified I–A.[3] When the defendant applied for his last student deferment in October 1967, the Military Selective Service Act of 1967 provided that any registrant receiving a student deferment would be ineligible to receive a dependency deferment except in cases of "extreme hardship to dependents."[4]

■ The burden of establishing that he was entitled to such a reclassification was upon the defendant.[5] And as has been so aptly stated, the test is "not inconvenience, or even hardship, but extreme hardship."[6] And where the hardship claim is one of alleged deprivation of financial support to a dependent, the registrant must present proof that he not only makes a "substantial" financial contribution to the dependent, but also that "the dependent, if deprived thereof, would suffer extreme hardship."[7] So tested, there is not the slightest basis for challenging the Board's determination.

Within a day of notification on March 27, 1969 that he had been reclassified I–A, the defendant requested a hardship deferment form, stating that his wife was expecting their first child. However, when he filed a "Dependency Questionnaire" on April 22, he stated he was a "partner in family business," his work that of "nursery manager" at a "farmers market," and his average earnings $120 per week. He listed his wife and child as dependents, but no explanation of hardship was made with respect to them; nor was any contention made that he contributed any money toward

---

1. See 50 U.S.C.App. § 462(a); 32 C.F.R. § 1632.14.

2. See 32 C.F.R. § 1622.25.

3. See 32 C.F.R. § 1622.10.

4. Military Selective Service Act of 1967, § 6, Pub.L. No. 90–40, § 1(6), 81 Stat. 100 (codified at 50 U.S.C.App. § 456(h) (1)).

5. See 32 C.F.R. § 1622.10.

6. Weissman v. Officer of the Day, 444 F.2d 1326, 1328 (2d Cir. 1971).

7. United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966); see United States ex rel. Rasmussen v. Commanding Officer, 430 F.2d 832, 836 (8th Cir. 1970).

the support of his father and mother. In his own language, the claim was:

"In addition to my wife and child as dependents, I also must claim my dad, who is a partner with me in our family business * * *. I do not contribute money to him in that sense, but he depends on me to run our nursery business, which requires heavy work, and long hours. He is 64 years old and can no longer run the business as he once did, it is just too much for him. This is the business that brings in both our earnings. This business has been in our family for over 28 years."

On this utterly unsubstantial claim—a claim that he be deferred in order to take over his father's business and permit the father to retire—the Board on May 13, 1969, upon a reopening, unanimously decided to continue his I–A classification and he was so notified. The ruling afforded the defendant an opportunity to be heard and to appeal the denial of his hardship claim.

Thereafter the defendant requested, and was granted, a personal appearance before the Board on August 12, 1969. On that occasion he presented a letter from his father, which in substance reiterated the defendant's claim that he was needed in the family business, and if inducted into the Service, "a hardship would be placed on both of us concerning the family business in which he and I are sole partners." And, the father added, that since he would soon be 65 years of age and the defendant handled the entire retail and bookkeeping aspects of the business, "it would be impossible for me to hire anyone to replace him." The Board requested that defendant furnish financial information and records

as to the father, but he refused. The Board voted unanimously to continue the defendant's I–A classification. Upon appeal, the Appeals Board, on January 8, 1970, unanimously classified him I–A. Not only was there an ample basis in fact [8] for continuance of defendant's I–A classification,[9] but to have made any other ruling would have been stultifying. There was no claim, let alone any showing, that defendant supported or made any contribution to the support of his father; there was no showing that his father was without financial income from sources other than the business, which he had successfully operated for twenty-eight years without the son's help, or that he was without capital sums adequately to support himself and his wife; there was no valid explanation why defendant's place in the family business, with which he was associated for only six months at the time he filed the hardship application and where his duties were ordinary, could not be carried on by a hired employee.[10] Finally, there was a refusal by the defendant to comply with the Board's reasonable request that information as to his father's finances be submitted. The defendant, notwithstanding the entry in the Board's records to this effect, denies he was requested to submit such financial information, but after hearing the witnesses' testimony, I find that indeed it was requested, and the defendant refused to submit the data.

■ The contention here advanced by the defendant that the Board was under a duty to subpoena records, including the father's, to obtain data as to his father's financial status borders on the arrogant, particularly so since the father submitted a letter supporting the hardship claim.[11] Surely the Board was un-

8. *See* 50 U.S.C.App. § 460(b) (3); Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

9. *See* Weissman v. Officer of the Day, 444 F.2d 1326, 1327 (2d Cir. 1971); Landau v. Allen, 424 F.2d 668, 671 (6th Cir. 1970); de Rozario v. Commanding Officer, 390 F.2d 532, 537 (9th Cir. 1967).

10. United States ex rel. Rasmussen v. Commanding Officer, 430 F.2d 832, 836 (8th Cir. 1970).

11. *Cf.* United States v. Antonelli Fireworks Co., 155 F.2d 631, 638–639 (2d Cir.), cert. denied, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946); United States v. Beekman, 155 F.2d 580, 584 (2d Cir. 1946).

der no affirmative duty to dig up facts to support the defendant's claim for deferment. And it is equally certain that he could not shift his burden to substantiate his claim by a refusal to comply with a request to proffer facts.[12] A possible reason for the refusal is suggested by some of the information as to the father's financial circumstances, disclosed by trial testimony. Two older brothers of the defendant had worked in the business and one of them was still engaged there at or about the time of the defendant's graduation from college.[13] The evidence also disclosed that the father, apart from income derived from the business, was a pensioner of the United States Government, receiving $5800 per annum;[14] that he had purchased a residence for $44,000, the payment for which was derived from a condemnation award of $37,750, and the balance from a savings account; that he owned the property where the Farmers' Market was conducted, which, in 1969, was assessed at $100,000—in sum, the information, had it been submitted to the Board, would have exposed the claim of extreme hardship as sham.

As to defendant's wife and child, there likewise was not the slightest support for any claim of "extreme hardship." Their situation, if not better than most, was no different than that of hundreds of thousands of wives and children of registrants who were inducted into Service. As an inductee, there would have been available pay and allowances for his family's support, with the prospect of increased pay in view of his college education.[15]

▮ Notwithstanding the failure of his hardship claim, the registrant, undaunted, still sought to obtain a deferment from his military duty as the Selective Service process moved forward, this time upon a claim that he was a conscientious objector, presented under the following circumstances. After his I–A classification was upheld on appeal in January 1970, defendant was found physically acceptable for service and ordered for induction on June 24. Two days before the scheduled induction date, the defendant for the first time requested a conscientious objector form and the Board mailed him SSS Form 150 and postponed his induction pending review of this claim. He filed SSS Form 150 on August 4, wherein he stated:

> "I still am the sole operator of my family's business and this business supports my wife and daughter, as well as my mother and father. I cannot therefor [sic] just leave all this behind to support a war I am so strongly [sic] against."

On August 11 he was granted a discretionary interview before the Board on his recently asserted conscientious objector claim. At this interview he was asked for additional information on the sincerity of the claim, but he had none to submit. The Summary of Ap-

---

12. *See* 32 C.F.R. § 1622.10; Austin v. United States, 434 F.2d 1301, 1303 (5th Cir. 1970), cert. denied, 402 U.S. 1012, 91 S.Ct. 2196, 29 L.Ed.2d 435 (1971); United States ex rel. Luster v. McBee, 422 F.2d 562, 567 (7th Cir.), cert. denied sub nom. Luster v. Cooksey, 400 U.S. 854, 91 S.Ct. 74, 27 L.Ed.2d 92 (1970); Landau v. Allen, 424 F.2d 668, 672 (6th Cir. 1970); United States v. Primous, 420 F.2d 33, 35 (7th Cir.), cert. denied, 397 U.S. 1053, 90 S.Ct. 1395, 25 L.Ed.2d 669 (1970); Lingo v. United States, 384 F.2d 724, 727 (9th Cir. 1967).

13. The nature of the services performed by defendant indicates that he could readily be replaced. According to the father's testimony at the trial, the son sold vegetables and was the bookkeeper "in a crude way." (Record at 58.) Also, it appeared that until defendant started to work in the business, the father kept the books. (Record at 63.)

14. The father testified he had applied for Social Security benefits, which he had not as yet received.

15. *Cf.* Weissman v. Officer of the Day, 444 F.2d 1326, 1328 (2d Cir. 1971). *See also* 50 U.S.C.App. § 456(h) (2); 32 C.F.R. § 1622.30(d); Selective Service System Local Board Memorandum No. 17 (April 7, 1969) (reproduced in SSLR 2165–66).

pearance, NY Form 7, contains the following:

"Registrant submitted physician's statement regarding his wife's condition. Under questioning by Chairman, registrant admitted that this physician had been recommended to him and his wife by their attorney.

" * * * He said that he felt that Selective Service had been insensitive to his needs; his wife would suffer if he were drafted and would end up on welfare. Failing to receive deferment on grounds of hardship, and having learned of recent court rulings regarding conscientious objectors, he claimed C. O. status * * *."

The Board, "after listening to Registrant's verbal reasons for making the claim," [16] unanimously decided not to reopen defendant's I–A classification, and he was so notified. The conscientious objector claim deserves no more comment than to note its self-exposure as frivolous. The evidence overwhelmingly establishes that the Board was fully justified in rejecting the conscientious objector claim as neither sincerely advanced nor based upon a sincere conscientious scruple.[17] Indeed, its lack of substance was so manifest that counsel, upon this trial, withdrew any claim with respect to reclassification upon that ground.[18]

The defendant makes a further contention, based upon the letter presented during the course of the interview on his post-induction conscientious objector claim. As already noted, when the defendant was asked for evidence to support that claim, he offered none; instead he presented a letter from a psy-chiatrist who reviewed the defendant's wife's childhood, her alleged ailments and family history, and recommended that "her husband be released from his obligation to serve by virtue of her obvious psychiatric difficulties." The letter had not the slightest bearing on the defendant's conscientious objector claim, to consider which the discretionary interview had been granted. However, the defendant contends the letter contained new information which entitled him to a reopening and a hardship deferment, but that the Board failed to consider this and consequently he was denied due process. The attempt to latch on to this letter to invalidate the order of induction must fail. Since it was submitted after the order of induction—indeed, after his scheduled induction date—a reopening could only be granted if the defendant presented new facts establishing a prima facie case for a new classification, and further, upon a specific finding by the Board that his status had changed, resulting from circumstances over which he had no control.[19] The belated claim, even if considered as one based on "emotional hardship," [20] suggested for the first time at the personal interview granted on his conscientious objector claim, failed on both counts.

The basic facts and conditions referred to in the letter and upon which the doctor based his opinion had been long standing, known to both the defendant and to his wife, and certainly existed in April 1969, when he filed his hardship application; he had that knowledge when he appeared personally before the Board in August 1969, and when his appeal was heard by the Appeals Board in January 1970. At no time during the

---

16. Minutes of Local Board.

17. See United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), aff'd on rehearing, 379 F.2d 915 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); cf. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); United States v. Johnson, 443 F.2d 189, 192 (2d Cir. 1971).

Further, since defendant's objection was to a particular war, rather than to all war, it did not entitle him to a conscientious objector classification. See Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

18. See Record at 98, 131.

19. See 32 C.F.R. § 1625.2; Weissman v. Officer of the Day, 444 F.2d 1326, 1329 (2d Cir. 1971).

20. See Brede v. Allen, 311 F.Supp. 599, 601–606 (N.D.Ohio 1969).

long course of the proceedings prior to his conscientious objector claim interview was any mention made of the wife's alleged "obvious psychiatric difficulties," although significantly the doctor's letter states: *"Prior to any of her husband's draft problems*, this woman had several well defined episodes of emotional turmoil, treated by local physicians and subsiding without definitive psychiatric intervention." [emphasis supplied]

■ Moreover, the assertion in the letter of the wife's "obvious psychiatric difficulties," upon which the doctor [21] recommended that the defendant be released from his obligation to serve, did not by itself establish a prima facie case of extreme hardship, entitling the defendant to reopening of his classification.[22] Nothing was offered to substantiate the allegations.[23] Significantly, although the letter refers to treatment of the wife by local doctors for the "well defined episodes of emotional turmoil," no statements were presented by any of the treating doctors.

In addition, the registrant's file, which contains the full record of his previously considered hardship claims, effectively refutes the post-induction allegations.[24] This zero hour, hastily conceived but never properly presented, "emotional" hardship claim, if allowed by the Board, would have constituted an egregious instance of such a claim, "seriously disrupt[ing] the orderly administration of the Selective Service System." [25]

■ Finally, despite the defendant's contention that the letter was not considered by the Board, the evidence is to the contrary. There is the direct testimony of a Board member to this effect,[26] and in addition a record of the Board.[27]

■ The defendant advances other contentions, none of which is of substance. He contends that his waiver of fatherhood exemption [28] was not a knowing or intelligent waiver. This contention is patently frivolous. The SSS Form application for II–S classification, signed by the defendant in October 1967, requesting renewal, in bold print con-

21. The doctor saw the wife on August 2, 9 days before the scheduled discretionary interview on the conscientious objector claim, "for psychiatric consultation in reference to her husband's draft status." Exhibit 2B.

22. *Cf.* Weissman v. Officer of the Day, 444 F.2d 1326, 1329 (2d Cir. 1971); Garrell v. Commanding Officer, 312 F. Supp. 386, 390–392 (E.D.Pa.1970).

23. *Cf.* United States v. Chacon, 436 F.2d 411, 413 (5th Cir. 1971).

24. *Cf.* Witmer v. United States, 348 U.S. 375, 383, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Brede v. Allen, 311 F.Supp. 599, 606 (N.D.Ohio 1969).

25. United States v. Delfin, 419 F.2d 226, 228 (2d Cir. 1969); *see* Mulloy v. United States, 398 U.S. 410, 418 n. 7, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

26. *Cf.* United States v. Deere, 428 F.2d 1119, 1122 (2d Cir. 1970); United States v. Jakobson, 325 F.2d 409, 417 (2d Cir. 1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. Balogh, 157 F.2d 939, 944 (2d Cir. 1946), vacated on other grounds, 329 U.S. 692, 67 S.Ct. 625, 91 L.Ed. 605 (1947).

27. *See* Summary of Appearance (NY Form 7).
Defendant also asserts that he was denied due process because the Board failed to state precisely the grounds on which it failed to act favorably upon the doctor's letter. But here there is no basis for believing that the Board relied upon any legally incorrect ground; indeed, all of the evidence amply demonstrated that the letter did not present a sufficient reason for reopening defendant's classification. *See* Weissman v. Officer of the Day, 444 F.2d 1326, 1328 (2d Cir. 1971); United States v. Messinger, 413 F.2d 927, 931 (2d Cir. 1969), cert. denied, 399 U.S. 927, 90 S.Ct. 2230, 26 L.Ed.2d 792 (1970); United States v. Gearey, 379 F.2d 915, 921 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

28. *See* 32 C.F.R. § 1622.30 (Class III–A).

tains the provisions of the Military Selective Service Act of 1967, which provide that one who receives a student deferment shall not thereafter be granted a deferment "except for extreme hardship to dependents."[29] Defendant, below the printed material, signed a statement that he read and understood the provisions of the Act. He now claims that had he known he was then giving up a fatherhood deferment, he would not have applied for the student deferment. The defendant, when he applied in October 1967 for continuance of his student deferment, had been married only three and a half months; his first child was born on March 31, 1969, eighteen months later, after he had already been graduated and classified I–A. Apparently the argument is that he would have foregone his student deferment and at once qualified himself for a fatherhood exemption. We need not pass judgment upon this conjectural claim. His testimony that he did not "read and understand" (despite his signed statement that he did) the provisions of the 1967 Act contained in SSS Form 104 is belied by the evidence. He was knowledgeable, articulate and experienced. He entered Pace College as a major in accounting, intending a career as a Certified Public Accountant.[30] His score on the mental section of the Armed Forces Qualification Test placed him in the highest group. Moreover, the Court had ample opportunity to evaluate his acuity and comprehension when he testified. In short, the Court finds that the defendant trifled with the truth and rejects as false his testimony that he neither read nor understood the effect of the request for deferment. Additionally, this Court can take judicial notice that the change effected by the 1967 Act, eliminating paternity as a basis for deferment where one already had a student deferment, was widely publicized and was the subject of common discussion among college students who were affected by it.[31] With such widespread publicity, and student sensitivity to the problem, it would indeed have been remarkable that the defendant was unaware of the change.

■ Next, the defendant charged that one Board member had failed to exercise independent judgment when acting upon his applications. The Court, on defendant's motion, after the case had been concluded, reopened the trial to afford the defendant an opportunity to call the Board member as a witness. When he failed to do so, the government called him. A review of all the testimony on this subject indicates the defendant's charge is without evidential support. To the contrary, the evidence establishes that each member of the Board reflected an unbiased judgment based upon evidence before it and that the defendant's claims were objectively and fairly considered and determined upon the merits. The defendant's charge of bias is spurious. That one Board member reacted with impatience to defendant's attitude, a "type of arrogance" upon answering, is quite understandable considering his demeanor at this trial. However, this understandable reaction in no way establishes that the judgment of the Board was not objective.

---

29. Military Selective Service Act of 1967, § 6, Pub.L. No. 90–40, § 1(6), 81 Stat. 100 (codified at 50 U.S.C.App. § 456(h) (1)).

30. *Cf.* Carson v. United States, 411 F.2d 631, 634 (5th Cir.), cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969) : "Appellant's claim that he was ignorant of his right to appeal based on his self-serving declaration he did not read the notice of classification avails him nothing. Whether willful or negligent, failure of one, who had attended college for about two years and had dealt with the Selective Service System for over four, to avail himself of information in his hands cannot be equated with ignorance."

31. *See, e. g.,* New York Times, July 1, 1967, at 1, col. 6.

Finally, the defendant contends that when he appeared at the Induction Center on his scheduled induction date, he was not given a physical inspection as required by the regulations, and that this vitiated the order to take one step forward. Since Mangone had undergone a full physical examination within one year of his induction, it was only required that he be afforded a physical inspection, which included that "with clothing removed [the examinee] will be closely observed by the examining physician to detect the presence of any communicable diseases and apparent defects not previously recorded."[32] The defendant, in a somewhat oblique manner, at trial raised the claim that he had not been physically inspected in accordance with the regulations. To clarify the issue the case was reopened. The examining doctor, a Lieutenant in the United States Naval Reserve Medical Corps, gave the details of his inspection and unqualifiedly testified that he had fully examined the defendant in compliance with the regulation; in addition, there was received in evidence the doctor's certificate to that effect made at the time of inspection. The Court finds that the defendant was physically inspected in accordance with the regulation.[33]

Upon all the evidence, the Court finds the government has sustained its burden of proof as to the essential elements of the crime charged; further, that defendant in no respect was denied his right to due process of law. Accordingly, the defendant is found guilty as charged.

The foregoing shall constitute the Court's Findings of Fact.

---

32. AR 601–270, ch. 4, § 2, ¶ 4–21(b) [1969].

33. This makes it unnecessary to consider whether, even if a physical inspection in accordance with the regulation had not been made, there was such prejudice as to invalidate the order to step forward.

*See* United States v. Brown, 438 F.2d 1115 (9th Cir. 1971); Briggs v. United States, 397 F.2d 370 (9th Cir. 1968); United States v. Haifley, 300 F.Supp. 355 (D.Colo.1969); *cf.* Grosso v. Resor, 322 F.Supp. 670 (E.D.N.Y.), aff'd, 439 F.2d 233 (2d Cir. 1971).