**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert L. REISS, Defendant.**

**No. 71 Crim. 850.**

United States District Court,
S. D. New York.

Nov. 14, 1972.

---

15. See Plaintiffs' Answer to Defendants' Interrogatories, Set One, Interrogatory No. 4.

Whitney North Seymour, Jr., U. S. Atty. by George E. Wilson, Asst. U. S. Atty., New York City, for plaintiff.

Karpatkin, Ohrenstein & Karpatkin by Marvin M. Karpatkin and John E. Le-Moult, New York City, for defendant.

## FINDINGS AND CONCLUSIONS

BRIEANT, District Judge.

By indictment filed August 11, 1971, defendant Robert L. Reiss was charged, on or about the 30th day of June, 1969, and up to and including the date of filing of the indictment in this District, with knowing failure, neglect and refusal to perform a duty required of him under, and in execution of, the Military Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq. Specifically, defendant was charged with failure to register with the duly designated registration official and Local Board which had jurisdiction in the area in which he was located on the date fixed for his registration.

Defendant pleaded not guilty and waived trial by jury. The cause was tried before me on September 14, 1972. Decision was reserved, and defendant continued on bail.

The statute which the defendant is charged with violating is § 462(a) of the Military Selective Service Act of 1967 ("Act"). Section 453 of the Act contains provisions with respect to registration. In substance, this section provides that every male citizen of the United States shall "present himself for and submit to registration at such time or times and place or places and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder."

In substance, 32 C.F.R. § 1611.1 requires that every male citizen of the United States who shall have attained the eighteenth anniversary of the day of his birth shall present himself for and submit to registration before a duly designated registration official, or the local board having jurisdiction in the area in which he has his permanent home, or in which he may happen to be on the day

or any one of the days fixed for his registration. Section 1611.1 thereof makes this duty to register a continuing duty.

By Presidential Proclamation No. 2699, persons such as defendant, born after September 19, 1930, shall be registered on their eighteenth birthday, or within five days thereafter.

Defendant was born on June 30, 1951. Accordingly, on June 30, 1969, or within five days thereafter (and continuously until he did so) defendant was required to register with the Local Board. Defendant was, on June 30, 1969, a resident of 526 East 20th Street in the Borough of Manhattan and City of New York, which area is served by Local Board No. 2, then located at 205 East 42nd Street in the Borough of Manhattan, City of New York.

As of August 11, 1971, the date on which the indictment was filed, defendant had not registered with the Selective Service System, in that he had not presented himself at the Board and had not submitted to registration before a duly designated registration official of the Local Board as required by 32 C.F.R. § 1611.1, previously mentioned.

On July 8, 1969, the New York City Headquarters of the Selective Service System received a registered letter postmarked July 3, 1969 and dated July 2, 1969, (within the five day period following defendant's eighteenth birthday). Enclosed with defendant's handwritten letter was a certificate from his high school on a mimeographed form, dated June 27, 1969, indicating that defendant was enrolled in the 12th grade, scheduled to graduate in June, 1970, and that his date of birth was June 30, 1951.

In his aforementioned letter, defendant advised the Selective Service System in relevant part as follows:

"Today I write you of my eighteenth birthday, June the thirtieth, nineteen —sixty-nine."

Defendant asserted in his letter a "conscientious objection based upon personal pacifism", averred that he could "not accept induction into the military, including evading moral beliefs by doing alternate service instead." Thereafter, defendant wrote:

"So I, a lad like any other eighteen year old, find myself not preparing to know that process which takes place after registering with a draft board since, as is evidenced here, I have not really registered at all."

Defendant then gave some details of his childhood experiences as a non-fighter in school and at play, receiving abuse from bullies, but not returning it, and closed with the following statement:

"My non-cooperation is as much a part of this religion [Unitarian-Universalism] as is anothers (sic) conventional conscientious objection or even another's participation in conscription. This then is my explanation for myself—Robert Lloyd Reiss."

The only contact defendant ever had with the Selective Service System or with his Local Board was through this letter, in which he declares specifically his intention not to register.

▆ Such a notification does not constitute compliance with the requirement that a person present himself and submit to registration. United States v. Houseman, 338 F.Supp. 854 (S.D.N.Y. 1972); United States v. Koehn, 457 F.2d 1332 (10th Cir. 1972).

A typical registration contemplates the filling out of all of the questions contained on the registration card, SSS Form 1, and such information is to be obtained from the registrant. Included in the information required are 17 separate items of information. While defendant's letter and his envelope in which it was contained might be deemed to provide some of these facts, many such items were not furnished.

The Local Board remained entirely in the dark as to (a) his place of birth, (b) the name and address of a person other than a member of the household who will always know registrant's address, (c) his color of eyes and (d) hair, (e) height, (f) weight, (g) obvious physical

characteristics, (h) nature of business, service rendered or chief product, (i) employer's name and (j) place of employment, and (k) reserve status.

It has been held (*e. g.* United States v. Norton, 179 F.2d 527 [2d Cir. 1950]) that an uncooperative registrant may not be convicted merely because of a refusal to sign the registration cards, since the regulations specifically permit the registrar to sign the registrant's name with the same effect as if he himself had signed. Also, if he has furnished *all requested information,* he has "submitted to registration". Thus, no conviction could stand unless registrant refused to give the information necessary for the registrar to fill out the card.

Registration contemplates that the prescribed Government forms will be filled out as a result of an interview and personal appearance of the registrant. The Local Board was not required, in the instant case, to make its own investigation to find the additional information necessary to register defendant. See United States v. Mangone, D.C., 333 F. Supp. 932, 935, aff'd 456 F.2d 1336 (2d Cir. 1972) in which a similar contention was characterized by Judge *Weinfeld* as "border[ing] on the arrogant".

It is of no significance that on August 3, 1971, on the occasion of defendant's arrest, he gave voluntarily to the Federal Bureau of Investigations Special Agent who arrested him, substantially all of the additional information which would have been required at the time of his registration.

We are told that based upon his letter, the Local Board could have "simply by making one telephone call to the persons named on the Seward Park High School form sent to Selective Service", obtained "sufficient information . . . to register defendant with the board." A short answer to this contention is that no requirement is imposed, by the statute or rules, or by the Constitution, for the Local Board to send out persons to make investigations, or make telephone calls to register a citizen. Congress may, and it has, placed the duty and burden of registration on the citizen himself.

Analogous are provisions of the Internal Revenue Code, 26 U.S.C. § 6020, which permit the Commissioner to file a taxpayer's tax return for him when he fails to do so. The existence of such a provision has never been held to obscure criminal liability for wilful failure to file.

Defendant's legal argument is that he has a "nonorthodox conscientious objection" which is constitutionally protected by the First and Fifth Amendments, and that his objection extends beyond rendering military or non-combatant service, and to registering with the draft and cooperating with the Selective Service System to the extent of signing forms, appearing at meetings and applying for classification in an exempt category as a conscientious objector.

Congress has attempted to establish a just and fair procedure for those conscientiously opposed to war in all forms, to obtain exemption. Presumably, absent total mobilization, this means somebody must serve in the place of a person *so* exempted. "Congress, of course, could, entirely consistently with the requirements of the Constitution, eliminate *all* exemptions for conscientious objectors." (Harlan, J., concurring in Welsh v. United States, 398 U.S. 333, 356, 90 S.Ct. 1792, 1805, 26 L.Ed.2d 308 (1970) [emphasis in original].) The exemption states "an important congressional policy" (ibid, at p. 355, 90 S.Ct. 1792).

Congress is competent to prescribe, or to delegate to others to prescribe, how the exemption shall be applied for and granted, and specifically, may require all to register, regardless of whether the conscientiousness of their belief extends to registration for the draft, as well as to submission to induction. It has done so, and this defendant has knowingly and wilfully, and under claim of right, failed to comply with lawfully imposed requirements of registration. Nothing more need be said.

Defendant points out that he did not flee, and that "His every act was open" (Deft's brief, p. 5). This may become relevant on the imposition of sentence, but does not bear on the question of guilt.

The Court finds defendant Guilty as charged. The foregoing constitutes findings pursuant to Rule 23(c), F.R.Crim.P.