**UNITED STATES of America,**

v.

**Garrett R. GERMAN.**

**Crim. No. 15111.**

United States District Court,
M. D. Pennsylvania.

Jan. 31, 1973.

S. John Cottone, Scranton, Pa., Harry
A. Nagle, Lewisburg, Pa., for United
States of America.

Stanford Shmukler, Philadelphia, Pa.,
for Garrett R. German.

## OPINION

MUIR, District Judge.

The Defendant, Garrett Richard German, by indictment dated February 17, 1972, was charged with failing to report for civilian work of national importance in violation of the Selective Service Act of 1967, 50 App.U.S.C. § 462. At his arraignment on May 8, 1972, Defendant pleaded not guilty, and trial was set for December 4, 1972, with the proviso that if a major anti-trust action scheduled for a 13-week trial beginning June 1, 1972 should settle, Defendant's trial could, at his option, be accelerated to August, 1972. The anti-trust case did settle but Defendant declined his acceleration option. The Defendant executed a waiver of trial by jury. Before the Court is Defendant's motion to dismiss the indictment or, in the alternative, to find him not guilty, by reason of the alleged invalidity of the draft board's order to report for civilian work and because of a lack of speedy trial.

The facts of the case are undisputed.[1]

1. The Court has adopted the Government's proposed findings of fact as accepted by Defendant with minor corrections. In addition, The Court has included several of its own findings which were obtained from Defendant's Selective Service File, and which the Court feels are necessary for the proper disposition of this case.

## FINDINGS OF FACT

1. The Defendant, Garrett R. German, was born on November 7, 1948, and, on or before the fifth day next after his eighteenth birthday, registered with Selective Service System Local Board No. 89 in Allentown, Pennsylvania. Thereafter, he was assigned Selective Service Number 36–89–48–822.

2. On January 4, 1967, Local Board No. 89 mailed the Defendant an SSS Form No. 100 (Classification Questionnaire) which he duly completed, executed and returned.

3. On his SSS Form No. 100, the Defendant stated that he was a high school graduate, was and had been a minister of the Watch Tower Bible and Tract Society since his ordination on January 16, 1960, and claimed to be a conscientious objector by reason of this religious training and belief. The Defendant further stated that he was employed as a farm machinery mechanic for Trexler Orchards, working an average of 50 hours per week.

4. The Defendant was mailed an SSS Form No. 150 (Special Form for Conscientious Objector) by his local board, which he completed and returned on January 27, 1967.

5. On February 20, 1967, Local Board No. 89 classified the Defendant in Class I–O (Conscientious Objector Available for Civilian Work Contributing to the Maintenance of the National Health, Safety or Interest). On the same day, the Local Board mailed an SSS Form No. 110 (Notice of Classification) to the Defendant.

6. The Defendant did not appeal his I–O classification.

7. On May 1, 1967, Local Board No. 89 mailed to the Defendant an SSS Form No. 223 (Order to Report for Armed Forces Physical Examination) which directed him to report on May 24,

1967, to the Salvation Army Headquarters at 810 Turner Street in Allentown, to be sent to an AFEES (Armed Forces Examining and Entrance Station) for a determination of his qualifications for military service.

8. The Defendant reported on May 24, 1967, as ordered, and was thereafter sent to the Wilkes-Barre AFEES where he was examined and was found fully acceptable for induction under current standards.

9. A DD Form 62 (Statement of Acceptability) was mailed to the Defendant on May 29, 1967, which advised him of his acceptability for induction.

10. By letter and certificate received on September 17, 1968, the Defendant advised Local Board No. 89 of his marriage on August 30, 1968, to Miss Donna Gildner.

11. On December 18, 1968, by an SSSP Form No. 3174, the local board advised the Defendant that, as a I–O registrant, he had been reached in the order of selection and was liable to perform his civilian work obligation. The board additionally requested the Defendant to seek and to obtain suitable employment to satisfy his obligation and to have his employer notify the local board of the fact of his employment on an SSSP Form No. 1018, enclosed for that purpose.

12. By letter dated December 23, 1968, and received by his local board on December 26, 1968, the Defendant stated in part:

"I realize the importance of this situation, but as a Christian minister of Jehovah, I may not accept this type of work. My conscience will not allow me to do this because it would be a compromise against my religion."

The Defendant also enclosed the SSSP Form No. 1018 which had previously been sent him.

13. By letter dated January 22, 1969, the local board's Executive Secretary advised the Defendant that, in accordance with Selective Service System Regulations then in effect (32 C.F.R. 1660.-20(c)), three types of work and four possible employers were submitted for his consideration and that, within ten days, the Defendant should advise his local board of his acceptance of one or of his rejection of all.

14. By letter received January 29, 1969, the Defendant told his local board:

"I respectfully acknowledge your letter, but, as I previously stated in my last letter dated December 23, 1968, I cannot accept this type of work. My conscience will not permit me to accept any of these jobs.

"I plan to enroll in the full time ministry, but, I will not be fully qualified until June. At this time I will enroll in the pioneer service."

15. On February 24, 1969, the local board sent to the Defendant an SSS Form 152 (Special Report for Class I–O Registrants) for completion and return within ten days.

16. By letter received on March 4, 1969, the registrant returned the SSS Form No. 152 uncompleted, stating:

". . . I do not wish to seem indifferent, but, after considering all aspects of this situation I am still unable to comply with this type of work. According to my religious training and beliefs I cannot accept any type of work in accordance with the Selective Service."

17. On page 3 of the SSS Form No. 152 Defendant noted: "I work as an automobile mechanic."

18. By its letter dated March 11, 1969, the local board advised the Defendant that it was continuing his processing in accordance with the appropriate Selective Service System Regulation then in effect (32 C.F.R. 1660.20(b)) and specified three types of work and four possible places of employment. The local board also requested that the Defendant advise it of his acceptance of one or of his rejection of all within ten days.

19. By letter received March 21, 1969, the Defendant told the local board:

"In answer to your letter dated March 11, 1969 I cannot accept any of the positions mentioned in the letter due to my religious training.

"As I previously stated in my letter of January 27, 1969, I plan to enroll in the full time ministry of Jehovah. Since a high rate of standards are required to become a Christian minister, I will not be able to qualify until June. In three months, when I am fully qualified, I am entering pioneer service."

20. By letter dated May 1, 1969, the local board Executive Secretary advised the Defendant that, in light of his rejection of the work offered, under the appropriate Regulation then in effect (32 C.F.R. 1660.20(b)), a meeting would be held with the local board and a representative of the State Director to assist in reaching agreement on the type of work to be performed.

21. On June 9, 1969, the meeting was held, attended by the registrant, three local board members, the Executive Secretary and the State Director's representative. At the meeting, the Defendant advised the local board members that agreement could not be reached inasmuch as any such agreement would conflict with his religious training and beliefs. Nothing was said at the meeting concerning Defendant's previously stated intention of becoming a minister.

22. On December 12, 1969, the Defendant was issued an SSS Form No. 153 (Order to Report for Civilian Work and Statement of Employer) which directed him to report to the local board office in Allentown on December 22, 1969, there to receive further instructions to report to the Williamsport Hospital in Williamsport, Pennsylvania, to which institution he had been assigned as a result of the inability of the board and the Defendant to determine a satisfactory place of employment.

23. The Defendant reported to his local board as ordered on December 22, 1969, and indicated that he would not accept employment at the Williamsport Hospital, signing a statement to this effect.

24. On December 22, 1969, the local board received the following items of correspondence.

(A) A letter from the Slatington Congregation of Jehovah's Witnesses which advised that the Defendant was serving as vacation pioneer and had averaged between 75 and 100 hours a month in field service for the past six months. This letter further stated that Defendant "is now in training for the full time ministry with the view of becoming a full time servant of God."

(B) A letter from the Defendant, dated December 18, 1969, in which he said:

"I appreciate your patience with me in this case, and as I stated in all my previous letters, it is because of my religious belief that I cannot except (sic) this type of work.

"I have sent along all my pioneer assignments by the Watchtower Society to prove what I have been doing the last six months. I would like to have them placed in my file."

(C) Certificates of the Watch Tower Bible and Tract Society, Inc., which showed that the Defendant had been appointed a vacation pioneer on August 4, 1969, and that, with the exception of the period from November 1, 1969, through November 17, 1969, the appointment had been successively renewed up to and including December 31, 1969.

25. On January 5, 1970, the local board received confirmation that the Defendant did not report, as ordered, to the Williamsport Hospital for employment in satisfaction of his civilian work obligation.

26. On January 5, 1970, the local board forwarded Defendant's file to the Pennsylvania Headquarters of the Selective Service System under Section 1660.-30 of the regulations (32 C.F.R. 1660.-30).

27. On January 8, 1970, the Pennsylvania Headquarters of the Selective Service System mailed to Local Board No. 89 a letter, received by that Board on January 12, 1970, returning the file to Registrant and stating, in pertinent part:

"Instead of referring the file to the Director of Selective Service under section 1660.30 of the regulations at this time, the information submitted by the registrant on December 22, 1969, should be reviewed by the local board to determine whether any classification action is warranted under section 1625.1 of the regulations and the registrant notified in the appropriate manner, depending upon the board's determination.

"Please advise us of the board's determination."

28. The "Minutes of Action" of Local Board No. 89 reveal that on January 13, 1970, the board considered the information submitted by the registrant and decided, by a 4-0 vote, not to reopen because the "Board felt that this registrant should be processed as a Conscientious Objector."

29. The Defendant was notified by letter dated January 19, 1970, that at the board meeting of January 13, 1970, it was decided to continue his processing under section 1660.30 of the Selective Service Regulations.

30. Pursuant to advice from Pennsylvania Headquarters, the board again wrote Defendant, on January 23, 1970, stating:

"This is to advise that the Local Board at their meeting on January 13, 1970, unanimously decided not to reopen your file."

31. On April 15, 1970, the Defendant advised the local board that he had been appointed a regular pioneer and enclosed copies from the Watch Tower Society of his certificates of appointment and assignment to the Slatington, Pennsylvania, congregation.

32. The Defendant was reported by State Headquarters of the Selective Service System as a possible violator on December 29, 1970, to the office of the United States Attorney for the Eastern District of Pennsylvania.

33. By letter received February 8, 1971, the Defendant advised his local board that he had been appointed class instructor of the Slatington congregation's Bible study center and that he felt that a I-O classification did not fit his circumstances.

34. From August 4, 1969, to December 31, 1969, the Defendant averaged at least 100 hours per month in the ministry. From January 1, 1970, until April 1, 1970, when the Defendant received his regular pioneer appointment, he similarly averaged at least 100 hours per month in active ministry.

35. It is not possible to say with certainty whether the Defendant's appointment as a vacation pioneer was extended, or continued, from January 1, 1970, to April 1, 1970. Whatever his status during this period of time, he did devote the hours set out above to his religious duties.

36. From the date of his appointment as a regular pioneer on April 1, 1970, the Defendant continued to average at least 100 hours a month in his active ministry until some time in the latter part of 1971, when the pregnancy of his wife and economic and domestic needs made this impossible.

37. The Defendant's son, Cory Michael German, was born on February 16, 1972.

38. In August of 1972, the Defendant was appointed a Ministerial Servant in the Slatington Congregation, which included secretarial and financial duties.

## DISCUSSION

 In support of his motion to dismiss the indictment, Defendant first contends that Local Board No. 89 abused its discretion in failing to reopen Defendant's classification to consider his claim for a IV-D ministerial exemption as indicated by Defendant's letters of January 29, 1969, and March 21, 1969

(see Findings of Fact, Nos. 14 and 19). It should be noted that in neither letter did Defendant request reopening, nor did he state that he was a full time minister. In both letters Defendant clearly stated that he *planned* to enroll in the full time ministry in June. Under the provisions of 32 C.F.R. § 1625.2, the board may reopen and consider anew the classification of a registrant upon his request and presentation of facts which, if true, would justify a change in his classification. It is settled that the burden is upon the registrant to establish that he has satisfied all the criteria for the exemption and is thus a minister in the statutory sense. United States v. Pompey, 445 F.2d 1313, 1317 (3d Cir. 1971). Although a registrant is not strictly held to the exact language of the regulations, cf. United States v. Turner, 431 F.2d 1265 (3d Cir. 1970), he must at least "indicate in some way that he is dissatisfied with his classification, wishes to have it changed, and is submitting new information for this reason . . . ." United States v. Pompey, 445 F.2d 1313, 1320–1321 (3d Cir. 1971). Defendant's expression of intent to become a minister cannot be considered new information in support of a request to reopen. The board need only act when the facts submitted to it indicate that the registrant is presently entitled to reclassification.

The Defendant further claims that his January 29, 1969 and March 21, 1969 letters placed upon the board a duty to keep itself informed of his status, and that had the board investigated Defendant's proposed plans, it would have discovered that on August 4, 1969, Defendant became a vacation pioneer devoting 75–100 hours per month to ministerial duties. 32 C.F.R. § 1625.1(c) requires the local board to keep informed of the status of classified registrants. However, this provision must be read in conjunction with 32 C.F.R. § 1625.1(b) which requires the registrant to report any change in status to the board. The board is under no obligation to discover facts in support of a particular classification. Cf. United States v. Mangone, 333 F.Supp. 932, 935–936 (S.D.N.Y. 1971). To require the board to investigate a registrant's expression of intent to do something in the future would impose an extraordinary administrative burden on the Selective Service System not contemplated by the regulations.

Following the June 9, 1969 meeting, at which the members of Local Board No. 89 explained to Defendant his obligation as a Class I–O registrant to perform appropriate civilian work (Findings of Fact No. 21), the Defendant did not contact the board in any way until after the December 12, 1969 Order to Report for Civilian Work (SSS Form 153) was issued. On December 22, 1969, the board received a letter from Defendant and other information which indicated that Defendant had been a vacation pioneer since August 4, 1969. (Findings of Fact No. 24).

Defendant contends that the board had a duty to reopen his classification upon the receipt of this information. Although Defendant's letter did not specifically request reopening, it should have been interpreted as such. Cf. United States v. Turner, 421 F.2d 1251 (3d Cir. 1970). However, the board was powerless to reopen at that time. 32 C.F.R. § 1625.2 provides:

" . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form 153) unless the local board first specifically finds there had been a change in the registrant's status resulting from circumstances over which the registrant had no control."

The "regulation is quite explicit in requiring that before the local board may reopen after an induction order has been issued there must be . . . a specific finding of a 'change in the registrant's status' since the induction order." Scott v. Commanding Officer, 431 F.

2d 1132 (3d Cir. 1970). The information submitted by Defendant clearly indicated that his change in status arose in August, 1969, prior to the Order to Report for Civilian Work. Although the board's apparent failure to meet and consider Defendant's request to reopen was a procedural error, the error was not prejudicial in that the information which Defendant submitted demonstrated that the board was powerless to reopen. United States v. Berry, 443 F.2d 5 (9th Cir. 1971).

■ The Defendant next urges that the January 8, 1970 letter to the board from the Executive Officer of the Pennsylvania Headquarters of the Selective Service System (Finding of Fact No. 27) was an instruction to reopen and consider anew the classification under 32 C.F.R. § 1625.3. However, that letter does not request or instruct the board to reopen. It merely suggests that the information submitted by Defendant should be "reviewed by the local board to determine whether any classification action is warranted under section 1625.1 of the regulations . . . ." This language is subject to two possible interpretations: (1) that the board should consider the registrant's letter as a request for reopening and decide whether he has shown a change in his status resulting from circumstances beyond his control pursuant to 32 C.F.R. 1625.2, or (2) that the board has *permission* to reopen, as opposed to being required to reopen, even in the absence of changed circumstances. See United States v. Noonan, 434 F.2d 582, n. 2 (3d Cir. 1970). In the absence of a clear indication of how the local board interpreted the January 8, 1970 letter, I feel that it should be construed in favor of the registrant. Therefore, it is assumed that the board had permission to reopen Defendant's classification despite the restrictions of 32 C.F.R. 1625.2.

■ On January 13, 1970, Local Board No. 89 reviewed the information submitted by Defendant on December 22, 1969, and decided not to reopen De-

fendant's classification. The reasons for the board's action are not stated in the minutes of that meeting (finding of Fact No. 28), nor anywhere else in Defendant's file. There are at least 3 possible reasons why the board voted not to reopen: (1) it declined to exercise the option to reopen impliedly given by State Headquarters, and found under 32 C.F.R. 1625.2 that the Defendant had not shown "changed circumstances," (2) it found that Defendant's claim for a IV-D exemption was not a *prima facie* case, or (3) it found that Defendant did present a *prima facie* case, but because it found Defendant to be insincere, or for some other unspecified reason, decided not to reopen. Because the system of judicial review of administrative action requires that the court have some idea of the basis for the local board's determinations, it is the law of this circuit that an order of the board may be invalid where the registrant's file contains no statement of the board's reasons for refusing to reopen his classification. Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970). The Defendant contends that the *Scott* doctrine is applicable to this case.

■ Before a statement of reasons for a denial to reopen is required under the *Scott* doctrine, a registrant must first establish a *prima facie* case of entitlement. Cale v. Volatile, 465 F.2d 1110 (3d Cir. 1972). Although counsel for Defendant has assumed throughout his briefs and on oral argument that Defendant presented a *prima facie* case for a IV-D classification, I hold that he did not present a *prima facie* case and, therefore, was not entitled to a statement of reasons for the board's refusal to reopen his classification. United States v. Pompey, 445 F.2d 1313, 1319–1320 (3d Cir. 1971).

■ In the *Pompey* case, *supra,* the court set forth the Third Circuit rule as to what constitutes a *prima facie* entitlement to a IV-D ministerial exemption:

" . . . in order to qualify for a ministerial exemption, the registrant

must satisfy the following tripartite test: (1) he must show a regularity of religious preaching and teaching; (2) the ministry must be his main and primary calling, his vocation rather than his avocation; and (3) his standing in the congregation must be recognized as that of a minister or leader of a group of lesser numbers."

445 F.2d at 1317. The Court in *Pompey* held that an alleged minister of Jehovah's Witnesses who engaged in 40 hours of secular work per week and devoted 113 hours per month to ministerial duties, 445 F.2d at 1318, n. 2, had not satisfied requirement number 2, and therefore had not made out a *prima facie* case for a IV–D exemption. Similarly, in the case at bar, Defendant did not show that the ministry was his main calling and vocation. The information submitted on behalf of Defendant on December 22, 1969, indicated that he was devoting 75–100 hours per month to ministerial duties while "training for the full time ministry with the view of becoming a full time servant of God." (Finding of Fact No. 24). Although it is asserted in Defendant's brief that as of August, 1969, he left his full time job at Mueller Chevrolet and became a part time employee for that company so that he could devote more time to the ministry, such information was never presented to the board. In fact, the only information in Defendant's file concerning secular employment indicated that he worked 50 hours per week (Finding of Fact No. 3), or that he had become an automobile mechanic (Finding of Fact No. 17). While I do not interpret the *Pompey* case as imposing a strict mathematical test of secular vs. ministerial employment, I feel that a registrant seeking a IV–D exemption has the burden of showing that the ministry is his main vocation. The Defendant's failure to sustain this burden negatives any contention that he presented a *prima facie* case for a ministerial exemption.

▮▮ Defendant's contention that the board's order to report for civilian work

was invalid because the board action at the January 13, 1970 meeting constituted a "*de facto* reopening," is likewise without merit. Not only do the board's minutes of the meeting fail to indicate that the board, in fact, considered the merits of Defendant's claim of exemption, but more importantly, the "*de facto* reopening" theory also requires that the registrant present a *prima facie* case of entitlement. Miller v. United States, 388 F.2d 973 (9th Cir. 1967).

▮▮ The Defendant's last ground in support of his motion to dismiss the indictment is that he was denied his right to a speedy trial because of pre-indictment delay. The violation of law which forms the basis of this prosecution occurred on December 22, 1969. Defendant was not indicted until February 17, 1972. In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed. 2d 468 (1971), the Supreme Court held that the speedy trial protections of the Sixth Amendment do not apply to pre-indictment delays, and that a Defendant may be entitled to relief only where he shows that pre-indictment delay by the Government was so prejudicial as to violate the Due Process Clause. Defendant asserts that he was prejudiced by a change of law arising between the offense and the indictment, when the Supreme Court in United States v. Ehlert, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), arguably restricted a defense to the validity of induction orders made available by Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970). This claim is without merit since I have in no way grounded my opinion in this case upon the *Ehlert* decision. The Defendant also claims that he was prejudiced by reason of the birth of a son to him and his wife on February 16, 1971. This is not the type of prejudice to which *Marion* refers. Only prejudice to the conduct of the defense may be found violative of due process. 404 U.S. at 325, 92 S.Ct. 455.

▮▮ I have found that the board's Order to Report for Civilian Work was

valid. Defendant's motion to dismiss the indictment will be denied. Since it appears that Defendant wilfully failed to report for civilian work as ordered (Findings of Fact Nos. 22 and 24), he is guilty as charged.

## CONCLUSIONS OF LAW

1. Defendant properly and knowingly waived his right to trial by jury.

2. The Defendant's letters received by the board on January 29, 1969, and March 21, 1969, imposed no duty on the board to make further inquiry of the Defendant or to take any other affirmative action.

3. The Order to Report for Civilian Work (SSS Form 153) issued by the board on December 12, 1969, was valid and proper.

4. As of December 22, 1969, the board was powerless to reopen Defendant's classification on the basis of the information submitted by and on behalf of the Defendant on December 22, 1969.

5. The information submitted by and on behalf of the Defendant on December 22, 1969, did not establish a *prima facie* case for a IV–D ministerial classification.

6. The January 8, 1970 letter from the Pennsylvania Headquarters of the Selective Service System authorized the board to reopen Defendant's classification in the board's discretion.

7. The board was not required to state its reasons for refusing to reopen Defendant's classification.

8. The Defendant was not deprived of his right to a speedy trial, nor was the pre-indictment delay so prejudicial as to deny Defendant due process.

9. The Defendant knowingly and wilfully failed to report for civilian work as ordered.

10. The Defendant is guilty of failing to report to his assigned place of employment in violation of 50 App. U.S. C. § 462.